**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PD LOGISTICS, LLC, an Illinois limited liability company; PAVLE DUROVIC; BANS, INC., an Illinois corporation; and ARSENIJE NENEZIC, individually and on behalf of others similarly situated, | ) ) ) ) ) ) | |
| | ) | Case No. 1:25-cv-06559 |
| Plaintiffs, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| v. | ) ) | |
| BMO BANK N.A., | ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs PD Logistics LLC ("PD Logistics"), Pavle Durovic ("Durovic"), Bans Inc. ("Bans"), and Arsenije Nenezic ("Nenezic")(altogether, "Plaintiffs"), individually and on behalf of others similarly situated, brought suit against Defendant BMO Bank ("BMO") alleging violations of 42 U.S.C. § 1981; the Equal Credit Opportunity Act, 15 U.S.C. § 1691(a)("ECOA"); the Illinois Consumer Fraud Act, 815 ILCS § 505, *et seq.* ("ICFA"), as well as common law breach of contract claims stemming from BMO's alleged practice of unilaterally closing the bank accounts and credit lines and accelerating payment for the full amount of credit lines it extended to Eastern European customers whose last names ended in "ic."[1] Before the Court is BMO's Motion to Compel Arbitration, as to all four Plaintiffs, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), or, in the alternative, to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)

---

[1] "-ic" and "-ić" is a common suffix or ending for the proper noun surname of persons of Montenegrin, Serbian, or other related Eastern European national origin.

1

("Motion") [14]. For the following reasons, the Court grants in part and denies in part BMO's various Motions.

## BACKGROUND

Unless otherwise noted, the following factual allegations are taken from Plaintiffs' Complaint, (Dkt. 1), and are assumed true for purposes of resolving this Motion. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

### A. Named Parties

PD Logistics is an Illinois limited liability company, primarily owned and controlled by Durovic, an individual of Eastern European descent, specifically Montenegrin descent. PD Logistics was issued a line of credit by BMO. Durovic also had a personal checking account and a business checking account with BMO. Bans is an Illinois corporation, primarily owned and controlled by Nezenic, an individual of Eastern European descent, specifically Montenegrin descent. Bans was issued a line of credit by BMO. Nezenic also had a personal checking account and a business checking account with BMO. BMO is a National Bank, and a subsidiary of the Bank of Montreal, a Canadian investment bank and financial services company. In the United States, BMO does business as "BMO Financial Group", where it has substantial operations in the Chicago area and elsewhere in the country, where it operates as BMO Bank, N.A.

In approximately November of 2022, Durovic opened a business checking bank account with BMO. Once Durovic opened the bank account, he began to receive communications from BMO, encouraging him to open a line of credit with BMO on behalf of his company PD Logistics. The communications occurred by telephone, advertising circulars, and in person communications from staff at the BMO branch located at 110 East Irving Park Road, in Roselle, Illinois. In November of 2022, Durovic applied for, was accepted for, and opened a business line of credit for PD Logistics with BMO pursuant to the terms of a "Letter of Agreement" ("LOA"). Durovic was required, as a

condition of the issuance of the LOA to personally guarantee the business line of credit. The LOA provided for the extension of a line of credit in the amount of $100,000.00, with interest to be charged on all amounts drawn by PD Logistics at the rate of 1.5% over BMO's prime rate; and also provided that PD Logistics would incur an early cancellation fee of $500 should it cancel the line of credit within one year.

PD Logistics relied on the LOA as the basis for the parties' agreement. At no time from November 2022 through August 17, 2023, was PD Logistics ever in default under the terms of the LOA. The LOA also provided that any demand for payment by BMO shall be made in writing and is deemed made on the date it is sent by BMO or received by PD Logistics. The LOA provides that, absent an event of default, PD Logistics must pay all amounts borrowed under the Letter of Agreement "within ninety (90) days following demand by BMO…"

Over the course of the loan, PD Logistics borrowed approximately $55,000 using its line of credit; and made payments ranging from $400 to $10,000 to BMO to reduce the principal amount it borrowed. Despite its good standing, on August 14, 2023, BMO sent a letter requesting that PD Logistics "close your deposit account(s) listed above by end of business 9/25/2023…."; that "[a]ny amounts owed to BMO may be collected from the remaining balance…"; and that "if you have a loan, you are obligated to repay the balance and must comply with the repayment terms of the loans.". On that same date, BMO also sent a letter to Durovic notifying him that BMO would be closing all of his business and personal accounts by September 25, 2023. On August 17, 2023, BMO sent another letter to PD Logistics informing it that, as a result of a "regular review of customer relationships and account activity" to "identify any transaction or information that may not fit within the expectations of BMO or legal requirements" - "BMO is terminating the business lending relationship you have with the bank." Furthermore, the letter recited "What this means for you:" to include: "You will not be able to make any credit advances on your credit line."

The ECOA requires that a lender provide a "statement of reasons for any adverse action taken against an applicant" for credit. BMO's letter to PD Logistics stated: "BMO bank conducts regular reviews of customer relationships and account activity for compliance and regulatory reasons. The purpose of the review is to identify any transaction or information that may not fit within our expectations or legal requirements and therefore exceeds the risk tolerance of the bank." This is the sole explanation provided by BMO to provide as its statement of reasons for closing the line of credit. BMO did not inform PD Logistics what the transaction or information was, what did not fit within BMO's expectations or legal requirements, or what exceeded the risk tolerance of the bank.

Plaintiff Nenezic experienced very similar treatment during this time period: first applying for, being accepted for, and obtaining and utilizing lines of credit for his corporation, Bans, from BMO, then receiving letters from BMO cancelling the line of credit, even though Bans was never in default. Nenezic also received a letter from BMO advising him that BMO would be closing all of his business and personal accounts.

### B. Class Allegations

Durovic and Nenezic made inquiries on behalf of themselves and their companies regarding BMO's actions against them. Those inquiries revealed information that BMO embarked on a campaign of unilaterally cancelling the lines of credit and bank accounts to large groups of its Eastern European foreign national customers, because of their ethnicity or national origin and because their last name ended in "ic." For this reason, Plaintiffs bring claims on their own behalf and as representatives of all other similarly situated individuals. Plaintiff seeks class certification under Rule 23 for the following class of persons (hereinafter, "Proposed Class"):

> All individuals of Eastern European ethnicity or national origin or heritage, whose last names end in "-ic", and all entities owned by such individuals, that had been provided with a line of credit by BMO, or who personally guaranteed such a line of credit, and who received notification that their line of credit was being cancelled, and who were not in default, as that term is defined in BMO's LOA, within the period five years prior to the filing of this lawsuit.

4

In response to Plaintiffs' individual and class-based claims, BMO filed a Motion to Compel Arbitration pursuant to the FAA, or, in the alternative, to dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1) and 12(b)(6).

**LEGAL STANDARD**

### A. Motion to Compel Arbitration

Under the FAA, the party moving for arbitration must show: (1) the existence of an enforceable agreement to arbitrate; (2) the claims fall within the scope of the arbitration agreement; and (3) there is a refusal to arbitrate. *See Zurich American Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Once the movant demonstrates these elements, the burden shifts to the party opposing arbitration to demonstrate that the arbitration agreement is unenforceable or that their claims are unsuitable for arbitration. *See Mecum v. Weilert Custom Homes, LLC*, 239 F.Supp.3d 1093, 1095 (N.D. Ill. March 6, 2017) (Coleman, J.).

### B. Rule 12(b)(1)

A Rule 12(b)(1) motion challenges federal jurisdiction, and the party invoking it bears the burden of establishing the elements necessary for subject matter jurisdiction, including standing. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021); *International Union of Operating Eng'rs v. Daley*, 983 F.3d 287, 294 (7th Cir. 2020). Under Rule 12(b)(1), the Court accepts all well-pled factual allegations as true and construes all reasonable inferences in the plaintiff's favor when a defendant has facially attacked standing. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021).

### C. Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations

as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

**DISCUSSION**

In its Motion, BMO argues Plaintiffs' claims must be compelled to arbitration because every Plaintiff agreed to binding arbitration clauses in their banking agreements and because their claims fall squarely within those provisions' broad scope. In the alternative, if arbitration does not apply, BMO argues Plaintiffs' claims fail on their merits. (Dkt. 15 at *2.)

### I. Motion to Compel Arbitration

BMO asserts it has more than established the requisite elements to compel arbitration. Because Durovic and Nenezic only had bank accounts, not lines of credit, Defendants assert their claims are governed by the terms of the BMO Harris Handbook (the "Account Agreement), which requires Plaintiffs to "agree to arbitrate all disputes or claims between [Plaintiffs] and [BMO] arising out of or relating to [Plaintiffs'] Account or this Agreement." (Dkt 15-1 at *19.) As to the scope of the Account Agreement, the arbitration provision specifically states that it is "intended to be broadly interpreted" to include "[c]laims arising out of or relating to your Account(s), this Agreement, any other agreement related to your Accounts, or any transactions arising thereunder." (*Id.*) Because Plaintiffs explicitly state their claims concern BMO's decision to "cancel[] the lines of credit and clos[e] the bank accounts," Compl. ¶¶1, 38–39, 41, 82, BMO argues Plaintiffs' claims directly reference and rely on matters covered by the arbitration provision. (Dkt. 15 at *4-5.) Finally, BMO argues that even if PD Logistics and Bans are not required to arbitrate, Durovic and Nenezic should at least be compelled to do so because they concede that they are governed by the Account Agreement. (Dkt. 21 at *4.)

6

Plaintiff, in response, emphasizes that the business entities, PD Logistics and Bans, are bound only by the LOAs for their lines of credit, not the "Deposit Account Agreement for Personal and Business Accounts" on which the BMO asks the Court to rely. (Dkt. 20 at *4.) The LOAs, however, do not have any arbitration clause, and do not provide for, reference, or require arbitration." In fact, the sole provision concerning jurisdiction states:

**Consent to Jurisdiction; Jury Trial Waiver, Governing Law:**
Borrower submits to the jurisdiction of the federal and state courts where the branch office that opened this Letter of Agreement is located for purposes of all legal proceedings arising out of or relating to this Letter of Agreement…

(Dkt. 20-2 at *7). Most importantly, Plaintiffs argue, the LOA, is explicit that it is the entire agreement of the parties, since the LOA states: if there is a conflict between its terms and the terms of another loan agreement, or any other credit agreement, "or all other instruments, agreements and documents" then the terms of the LOA "shall prevail and the terms of the Other Loan Documents shall not apply to the Loans." (*Id.*) Plaintiffs conclude, BMO's argument that another agreement's arbitration clause applies to the Letter of Agreement holds no merit and is completely "decimated by its own writing." (Dkt. 20 at *6.)

The Court agrees with BMO that it has met the elements to compel arbitration for the personal and business checking accounts held by Durovic and Nenezic. When examining the language of an arbitration clause, the Seventh Circuit has repeatedly held that the language "arising out of" and "relating to" is extremely broad and creates a "presumption of arbitrability" that "reaches all disputes having their origin or genesis in the contract." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033-34 (7th Cir.2012) (quoting *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir.1993)); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909–10 (7th Cir.1999) (describing an arbitration clause with the language "arising out of or relating to" as "extremely broad and capable of an expansive reach," creating a "presumption of arbitrability"). Here, where Plaintiffs concede that they signed an agreement to arbitrate all claims "arising out of or relating to" their accounts, the Court

7

will not displace the presumption of arbitrability. Even if the Court has any doubt about whether the scope of Plaintiffs' claims fall within the agreement, which it does not, any doubt must be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25 (1983)*; Gore,* 666 F.3d at 1032.

As to the business entities, PD Logistics and Bans, however, BMO has not shown any of the requisite elements to compel arbitration. The LOAs PD Logistics and Bans agreed to are explicit that its terms prevail over any other agreements, instruments, or documents. Absent any proof that the LOA contains an enforceable arbitration provision, the Court will not bind the business Plaintiffs to a separate, inapplicable instrument to compel arbitration. Accordingly, the Court grants BMO's Motion to Compel Arbitration as to Durovic and Nenezic[2] and denies it as to PD Logistics and Bans.

## I.     12(b)(1) and 12(b)(6) Motions to Dismiss

Having granted BMO's Motion to Compel arbitration as to Plaintiffs Durovic and Nenezic, the Court now addresses BMO's Motion to Dismiss the remaining Plaintiffs,' PD Logistics and Bans, claims pursuant to Rules 12(b)(1).

### A. 12(b)(1) Motions

BMO argue Plaintiffs' claims must be dismissed because they lack proper standing. (Dkt 15 at *5.)

#### 1.  42 U.S.C. § 1981 Claims

Any claim brought under § 1981 must identify an impaired contractual relationship under which the plaintiff has rights. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). In most cases, a shareholder and contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts and thus unable to bring a suit under § 1981. *A.H. Emp. Co. v. Fifth*

---

[2] The Court makes no determination as to the merits of Plaintiffs' claims but solely determines that Durovic and Nenezic must resolve those claims through binding arbitration.

*Third Bank*, No. 11 C 4586, 2012 WL 686704, at *5 (N.D. Ill. Mar. 1, 2012) (Holderman, J.)(dismissing §1981 claims of the owners and guarantors of a loan); *Jones v. Culver Franchising Sys., Inc.*, 12 F. Supp. 3d 1079, 1087 (N.D. Ill. 2013) (Durkin, J.)(dismissing §1981 claims by owners). A corporate entity can bring a suit under § 1981, however, "when the owner, majority of shareholders and/or president are members of the specific class that is alleged to have been discriminated against." *New Louisiana Holdings, LLC v. Arrowsmith*, No. 11 C 5031, 2012 WL 6061710, at *6 (N.D. Ill. Dec. 4, 2012) (Castillo, J.); *see Amber Pyramid, Inc. v. Buffington Harbor Riverboats, LLC*, 129 Fed. App'x. 292, 294 (7th Cir.2005) (allowing corporation owned by two African American sisters to maintain a suit under § 1981).

BMO argues that Plaintiffs claims are improper under ∫ 1981 because their status as owners and guarantors does not create sufficient privity for standing. (Dkt. 15 at *5.) Plaintiffs, by contrast, argue that their corporations have assumed the imputed racial identity from their owners, Durovic and Nenezic, and are thus able to be direct targets of discrimination as to maintain a ∫ 1981 suit. Since Plaintiffs have explicitly alleged their corporations were the subject of discrimination based on the imputed identity of its owners, at this stage, the Court will not dismiss Plaintiffs' claims for lack of standing.

### 2. ECOA Claims

The ECOA makes it illegal for creditors to "discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of race." 15 U.S.C. § 1691(a)(1). The ECOA's definition of an applicant is "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b); *Consumer Fin. Prot. Bureau v. Townstone Fin., Inc.*, 107 F.4th 768, 773 (7th Cir. 2024). 12 C.F.R. § 202.2(e) further defines "applicant" under the ECOA as "any person who requests or who has received an extension of credit

from a creditor" including "any person who is or may become contractually liable regarding an extension of credit."

BMO asserts Plaintiffs' ECOA claims fail because their corporations have no racial designation and are thus unable to bring a claim for discrimination under the ECOA. (*See* Dkt 15 at *9). Plaintiff, by contrast, emphasizes that a court in the Northern District of Illinois recently rejected BMO's assertion, that a company cannot bring a claim under the ECOA, in *Spike Body Werks v. Byline Bankcorp, Inc.*, 20-CV-4771, 2021 WL 3849647 (N.D. Ill. Aug. 27, 2021) (Seeger, J.). As *Spike Body Werks* explains, "Congress banned discrimination against companies based on race and national origin, even though companies themselves do not have a race or a national origin," since "[a] bank that discriminates against a company, based on the race of the company's management, has discriminated against the company on the basis of race." *Id.* at *4.

The Court will not dismiss the corporate Plaintiffs' claims for lack of standing at this stage because they have clearly alleged they are applicants under the statute who received an extension of credit. Moreover, in line with the reasoning in *Spike Body Werks*, the Court will not foreclose Plaintiffs' ability to maintain a claim under the ECOA because Plaintiffs have alleged the company was discriminated against based on the identities of the companies' management.

3. *Breach of Contract Claims*

Under Illinois law, "to assert an affirmative claim against a lender, a guarantor must establish that he suffered a direct injury as a result of the lender's alleged breach against the principal, which is independent from and not merely derivative of the resulting injury suffered by the principal." *Performance Elec., Inc. v. CIB Bank*, 371 Ill. App. 3d 1037, 1040 (1st Dist. 2007).

BMO argues, because there are no allegations that Durovic and Nenezic suffered any injuries that were not derivative of the injuries purportedly suffered by PD Logistics and Bans, they do not have standing to maintain their claims. (Dkt. 15 at 7.) BMO fails in its argument, however, to address

10

standing as to the remaining corporate entities. As PD Logistics and Bans, explain, they brought their claims under their own loans and LOAs, not merely as guarantors. Accordingly, BMO's standing argument fails.

4. *ICFA Claims*

For reasons similar to the Court's standing determination for the breach of contract claims, the Court will not dismiss the remaining Plaintiffs' ICFA claims for lack of standing. BMO concedes the "consumers" were the borrowers, not Durovic and Nenezic. (Dkt. 15 at 7.) It is undisputed that the corporate Plaintiffs, PD Logistics and Bans, were the consumers and borrowers for the contract at issue.

## A. 12(b)(6) Motion

Having determined PD Logistics and Bans have standing to bring their claims, the Court now turns to BMO's argument that Plaintiffs have otherwise failed to state claims pursuant to Rule 12(b)(6).

### 1. *42 U.S.C. § 1981 Claims*

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981. The Supreme Court has indicated that a claim is cognizable under § 1981 if a plaintiff can show that he was subjected to intentional discrimination because of his ancestry or ethnicity. *St. Francis College v. Al–Khazraji,* 481 U.S. 604, 613 (1987).

BMO argues Plaintiffs' § 1981 claims cannot survive because they are not members of a racial minority and because they cannot allege discriminatory intent. (Dkt. 15 at *6-7.) Specifically, because "Eastern European" is not a race, BMO argues, Plaintiffs cannot maintain their claims. (*Id.* at *7.) BMO additionally argues Plaintiffs' allegations of discriminatory intent are "threadbare" and "sparce." Plaintiffs' allegations that a single person who "happened to be of Eastern European ethnicity" committed fraud, and that BMO subsequently closed accounts of customers with last names ending

11

in "-IC," BMO argues, does not suffice. Plaintiffs, by contrast, maintain that they are "genetically part of an ethnically and physiognomically distinctive sub-grouping of homo sapiens." (Dkt. 20 at *11.) Plaintiffs further emphasize that the Supreme Court has concluded that "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics" under § 198. *Id.* (citing *Saint Francis*, 481 U.S. at 613); (citing *Phillips v. Baxter*, 768 F. App'x 555, 559 (7th Cir. 2019)). Plaintiffs conclude that they have alleged specific and detailed facts to substantiate their claims that BMO disproportionally cancelled credit applications by Eastern Europeans with a last name that ended in "ic" who are of Montenegrin, Serbian, Croation, or Bosnian descent. (Dkt. 20 at *11.)

At this stage, the Court will not dismiss Plaintiffs' § 1981 claims based on BMO's assertion that they do not belong to a "race." Section 1981 is written in terms of race (giving all persons the same rights as "enjoyed by white citizens") but does not specifically address national origin. *See Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756-57 (7th Cir. 2006). The Supreme Court has resolved the issue by interpreting the term "race" as broadly as possible under § 1981 to include identifiable classes of persons who are victims of intentional discrimination because of their ancestry or ethnic characteristics. *Saint Francis*, 481 U.S. at 613 (explaining that the concept of "race" is broad within the meaning of § 1981, relying on the legislative history and common use of language at time the statute was enacted, and extending to matters of ancestry commonly associated with nationality and ethnicity, not race in a more modern sense). The Court merely needs to determine if Plaintiffs have sufficiently alleged they have been discriminated against based on "their ancestry or ethnic characteristics," at this stage. *See Id.* at 605. The Court believes they have. While individuals of Montenegrin, Serbian, Croation, or Bosnian descent with a last name that ended in "ic" are not necessarily members of a distinct "race" as we define it today, the Court, in line with the broad reach of the statute, recognizes the geopolitical and historical malleability of "race." In fact, even the Supreme Court acknowledged

that, historically, even Germans and Englishmen—groups we now label as definitively "white"—were considered separate races at the time § 1981 was adopted. *Elzeftawy v. Pernix Grp., Inc.*, 477 F. Supp. 3d 734, 772–73 (N.D. Ill. 2020) (Chang, J.) (citing *St. Francis*, 481 U.S. at 611-12). BMO's reliance on *Kostic v. United Parcel Serv., Inc.*, 532 F. Supp. 3d 513, 525–26 (M.D. Tenn. 2021), to assert "Eastern European" is not considered a race for purposes of § 1981 , is neither binding nor persuasive on this Court, and more importantly, fails to adequately grasp historical and political shifts in the definition of "race" that the statute allows.

As to the plausibility of Plaintiffs' claims of intentional discrimination, drawing all reasonable inferences in favor of the Plaintiffs, the Court will not dismiss Plaintiffs claims. At minimum, BMO's decision to disproportionately cancel the credit lines of individuals of Montenegrin, Serbian, Croation, or Bosnian descent with a last name that ended in "ic," during a short and distinct timeline, is suspect. Based on the record before this Court, Plaintiffs' theory that BMO acted with discriminatory intent is viable and would benefit from discovery. If BMO can prove a non-discriminatory intent for its actions, it can elucidate that intent through discovery, but at this stage, the Court will allow Plaintiffs to develop their claims.

Accordingly, the Court denies BMO's Motion to Dismiss Plaintiffs' *§ 1981* claims.

*2. ECOA Claims*

The ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction...on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). In its Motion, BMO merely reiterates that PD Logistics and Bans, as Illinois limited liability companies, cannot maintain claims of discrimination against Eastern Europeans. (*See* Dkt 15 at *9-10). For the reasons already stated in this Opinion, *see supra* at 9-11, the Court rejects this argument. As to the actual merits of their ECOA claims, Plaintiffs have sufficiently alleged that defendants discriminatorily closed their lines of credit due to the ethnicity

13

specific surnames of their owners. Accordingly, the Court will not dismiss their ECOA claims at this stage.

    *4. Breach of Contract Claims*

To state a claim for breach of contract under Illinois law, the plaintiffs must allege: (1) the existence of a valid and enforceable contractual promise, (2) a breach of that promise, (3) that the plaintiff performed his contractual obligations, and (4) resultant damages. *Dual-Temp of Ill., Inc. v. Hench Control, Inc.*, 821 F.3d 866, 869 (7th Cir. 2016).

BMO sent letters on August 16 and 17, 2023, terminating the "business lending relationship" and stating: "[i]f you have any outstanding balance it must be paid in full within 90 days from the date of this letter." (Compl. ¶¶29, 35). BMO argues this demonstrably proves that it complied with the 90-day requirement outlined in the LOAs. BMO further argues, Plaintiffs purposefully conflate the notice ending the personal banking relationships with the line of credit closure notices to manufacture a 43-day notice. (Dkt 15 at *10-11). BMO further states the "Lending Relationship Notice provided the required 90- day repayment period." (*Id.* at 11) Finally, BMO asserts that Plaintiffs were not allowed to continue draws on the lines of credit after the closure notices because they contractually agreed to "cease using the Demand Line of Credit upon any such notice or demand." (*Id.*)

Based on the record before the Court, Plaintiffs cannot maintain their breach of contract claims. Instead of denying BMO's assertions, Plaintiffs state their allegations that BMO closed the line of credits without the requisite notice, is "either true, or not true" and "a trial question of fact for a jury, not a legal question to be addressed in a motion to dismiss." This legal conclusion, in light of BMO's uncontested evidence that it provided the requisite 90-day notice, is inadequate to maintain a claim, even at this stage. Accordingly, the Court grants BMO's Motion to Dismiss Plaintiffs' breach of contract claims.

    *5. ICFA Claims*

Finally, to prevail on a claim under the ICFA, a plaintiff must establish: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; (3) the occurrence of the unfair or deceptive practice during a course of conduct involving trade or commerce; and (4) that the defendant's conduct proximately caused actual damages to the plaintiff. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). Since Plaintiffs' ICFA and related claims are based in fraud, they are also subject to Rule 9's heightened pleading standard that requires a party alleging fraud to "state with particularity the circumstances constituting fraud." See Fed. R. Civ. P. 9(b). This "ordinarily requires the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted).

Plaintiffs' ICFA claims fail for two independent reasons. First, as BMO emphasizes, Plaintiffs identify no speaker, timing, or precise communications that constituted fraud, falling well below the heightened pleading standard required by Rule 9(b). Second, "[w]here the same act or omission constitutes a violation of the [ECOA] and of applicable State law, a person aggrieved by such conduct may bring a legal action to recover monetary damages either under [the ECOA] or under such State law, but not both...." 15 U.S.C. § 1691d (e). Because plaintiffs have chosen to pursue an ECOA claim for discrimination based on the same act and omissions, they cannot also pursue an ICFA claim. *See Tribett v. BNC Mortgage, Inc.*, No. 07 C 2809, 2008 WL 162755, at *3 (N.D.Ill. Jan. 17, 2008) (Kendall, J.) (dismissing class action claim under ICFA where plaintiffs chose to pursue FHA and ECOA claims). Accordingly, the Court grants BMO's Motion to Dismiss Plaintiffs' ICFA claims.

**CONCLUSION**

For the foregoing reasons, the Court grants BMO's Motion to Compel Arbitration as to Durovic and Nenezic and denies it as to PD Logistics and Bans. The Court also denies BMO's

12(b)(1) Motion to Dismiss, denies its 12(b)(6) Motions to Dismiss Plaintiffs' § 1981 and ECOA claims, and grants its 12(b)(6) Motion to Dismiss Plaintiffs' breach of contract and ICFA claims [14].

**IT IS SO ORDERED.**

Date: 3/4/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge