**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PD LOGISTICS, LLC, an Illinois limited liability company; PAVLE DUROVIC; BANS, INC., an Illinois corporation; and, ARSENIJE NENEZIC, Individually and on Behalf of Others Similarly Situated,** | ) | **Case No. 25-cv-06559** |
| **Plaintiffs,** | ) | **Judge Sharon Johnson Coleman** |
| **v.** | ) | **Magistrate Judge Laura K. McNally** |
| **BMO BANK, N.A.,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY UNDER THE EQUAL CREDIT OPPORTUNITY ACT**

Plaintiffs PD Logistics, LLC., ("PD Logistics") and Bans, Inc., ("Bans) (collectively herein, "Plaintiffs"), through their undersigned counsel, hereby submit the following Memorandum in support of Plaintiffs' Motion for Partial Summary Judgment against Defendant, BMO Bank, N.A., ("BMO") as follows:

## INTRODUCTION

PD Logistics and Bans seek summary judgment on a simple and undeniable issue: They were not provided with a reason for the revocation of their line of credit loans from BMO when their lines of credit were cancelled. They also were not provided with a statutorily-required notice about their rights regarding the termination of their loan.

On or about November 18, 2022, PD Logistics applied for and was issued a $100,000 line of credit by BMO. *See* Plaintiffs' Rule 56.1 Statement of Material Facts ("SMF"), ¶¶1, 3, and 5. Similarly, on or about April 22, 2022, Bans applied for and was issued a $100,000 line of credit

by BMO. *Id*. at ¶¶2, 4, and 6. From the time the credit lines were issued until their termination in August of 2023, neither PD Logistics nor Bans ever defaulted or were delinquent on their respective credit lines. *Id*. at ¶¶23-24. Despite their good standing, on August 17, 2023, BMO sent a letter to PD Logistics informing it that as a result of a "regular review of customer relationships and account activity" to "identify any transaction or information that may not fit within the expectations of BMO or legal requirements" - "BMO is terminating the business lending relationship you have with the bank." *Id*. at ¶8. Furthermore, the letter recited "What this means for you:" to include: "You will not be able to make any credit advances on your credit line." *Id*. On August 16, 2023, BMO sent an identical letter to Bans. *Id*. at ¶9.

BMO's letter to PD Logistics and to Bans stated: "BMO bank conducts regular reviews of customer relationships and account activity for compliance and regulatory reasons. The purpose of the review is to identify any transaction or information that may not fit within our expectations or legal requirements." *Id*. at ¶¶8-9. This is the sole explanation provided by BMO as its statement of reasons for terminating the lines of credit. *Id*. BMO did not inform Plaintiffs what the transaction or information was, or what did not fit within BMO's expectations or legal requirements. *Id*. BMO's letters to Plaintiffs also failed to include the mandatory anti-discrimination statement required by Regulation B of ECOA, informing credit applicants that creditors cannot discriminate on the basis of race, color, religion, national origin, sex, marital status, age, or public assistance income. *Id.*

ECOA and the case law interpreting it is clear: A failure to either provide a statement of reasons for an "adverse credit action" or "written notification of adverse action which discloses (i) the applicant's right to a statement of reasons ..., and (ii) the identity of the person or office from which such statement may be obtained - is a violation of ECOA. *See* 15 U.S.C. § 1691(d)(2). No

showing of discrimination is necessary for liability under ECOA. ("Because section 1691(d) of the ECOA sets forth a notification requirement separate and apart from the statute's anti-discrimination provisions, the court finds that Alvarado's allegation that Mauro Chevrolet failed to provide written notification of an adverse credit decision is sufficient to establish an ECOA claim". *See, e.g., Costa v. Mauro Chevrolet, Inc.,* 390 F. Supp. 2d 720, 729 (N.D. Ill. 2005)*, Treadway v. Gateway Chevrolet Oldsmobile, Inc.,* 362 F.3d 971 (7th Cir.2004).

Likewise, a failure to provide the statutorily-required notice when an adverse action is taken that ECOA prohibits creditors from discriminating on the basis of national origin, or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act, as provided by 12 C.F.R. § 1002.9 (b)(1), is also required. Both failures establish BMO's liability to Plaintiffs under ECOA for these two, separate violations committed against each of these two Plaintiffs, regardless of, and separate and apart from, any discriminatory intent against these two Plaintiffs, or the many others whose loans BMO also cancelled. ECOA and Regulation B both require a "statement of reasons" from BMO for its action - its "adverse action", as the statute reads - in terminating Plaintiffs' credit loans. BMO has admitted that, prior to its revocation of the loans, these Plaintiffs were *not* in default of the loans. *See* SMF at ¶¶23-24.

Likewise, these two letters sent by BMO were not merely some errant mistake or inadvertent error. BMO has admitted that it has sent similarly-phrased and/or identical in form letters to other borrowers, terminating their loans, and providing the same explanation to them - which is no explanation at all, in violation of ECOA's mandate of a "statement of specific reasons" for an adverse credit decision. *See* SMF at ¶22.

Entry of partial summary judgment on the issue of BMO's liability to Plaintiffs under the Equal Credit Opportunity Act is straight forward and required.

## STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, *Packman v. Chicago Tribute Co*., 267 F.3d 628, 637 (7th Cir. 2001).

Once the moving party satisfies the burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995). A factual finding is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248; *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2001). "Mere 'metaphysical doubt as to the material facts 'is not enough." *Id*. (quoting *Matsushita Elec. Co. v. Zenith Radio Corp*., 106 S. Ct. 1348, 89 L.E.2d 538 (1986)).

## ARGUMENT

The Equal Credit Opportunity Act was originally enacted in 1974 to prohibit discrimination in credit transactions." *Treadway v. Gateway Chevrolet Oldsmobile, Inc*., 362 F.3d 971, 975 (7th Cir.2004). "It was amended in 1976 to require creditors to furnish written notice of the specific reasons why an adverse action was taken against a consumer." *Id*. In relevant part, the statute

provides that "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2). Further, 15 U.S.C. § 1691(d)(3) imposes a duty on creditors to provide "specific reasons" for the taking of any adverse actions against credit applicants. ECOA specifies that "[a] statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken". 15 U.S.C.A. § 1691(3). Likewise, Regulation B requires that "[a] notification given to an applicant when adverse action is taken shall be in writing and shall contain ... [a] statement of specific reasons for the action taken." 12 C.F.R. § 1002.9(a)(2)(i) (emphasis added); *Wigod v. PNC Bank, N.A.,* 338 F. Supp. 3d 758, 766 (N.D. Ill. 2018). The term "adverse action" is defined by the statute as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. 15 U.S.C. § 1691(d)(6).

The regulations that implement ECOA mirror the notice requirements, and provide that the notice "must be specific and indicate the principal reason(s) for the adverse action." 12 C.F.R. § 1002.9(b)(2) (Regulation B). Regulation B provides:

> Adverse Action Notice (§ 202.9(a)(2)): "A notification of adverse action must be in writing and must contain certain information, including the name and address of the bank and the nature of the action that was taken. In addition, the bank must provide an ECOA notice that includes the identity of the federal agency responsible for enforcing compliance with the act for that bank. This notice is generally included on the notification of adverse action. The bank must also either provide the applicant with the specific principal reason for the action taken or disclose that the applicant has the right to request the reason(s) for denial within sixty days of receipt of the bank's notification, along with the name, address, and telephone number of the person who can provide the specific reason(s) for the adverse action. The reason may be given orally if the bank also advises the applicant of the right to obtain the reason in writing upon request.

Federal Fair Lending Regulations and Statutes, Equal Credit Opportunity (Regulation B), Consumer Compliance Handbook Reg. B • 1 (1/06). ECOA's notice requirement, § 1691(d), was added by amendment in 1976 along with protections based on race, color, and national origin that supplemented ECOA's existing sex and gender protections. See, Pub. L. No. 94-239 (1976). While ECOA's original purpose is to require that financial institutions and other firms engaged in the extension of credit make that credit equally available to all credit-worthy customers without regard to protected classifications, Pub. L. 93-295, § 502 (1974), in enacting the 1976 amendments, Congress viewed the new 'requirement that creditors give reasons for adverse actions' as fulfilling a separate educational or informational goal as well." *Chen*., 393 F. Supp. 3d at 853 (quoting S. REP. 94-589, 4, 1976 U.S.C.C.A.N. 403, 406)). The Congressional Report states:

> The requirement that creditors give reasons for adverse action is, in the Committee's view, a strong and necessary adjunct to the antidiscrimination purpose of the legislation, for only if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices. Yet this requirement fulfills a broader need: rejected credit applicants will now be able to learn where and how their credit status is deficient and this information should have a pervasive and valuable educational benefit. Instead of being told only that they do not meet a particular creditor's standards, consumers particularly should benefit from knowing, for example, that the reason for the denial is their short residence in the area, or their recent change of employment, or their already over-extended financial situation. In those cases where the creditor may have acted on misinformation or inadequate information, the statement of reasons gives the applicant a chance to rectify the mistake.

S. REP. 94-589, 4, 1976 U.S.C.C.A.N. 403, 406. Based on the legislative intent, courts have held being a member of a protected class is not required. *See*, *e.g., Chen v. Chase Bank USA, N.A.,* 393 F. Supp. 3d 850, 854 (N.D. Cal. 2019) ("Congress's intent to provide 'valuable educational

benefits 'through ECOA's notice requirement therefore operates alongside and in conjunction with ECOA's original anti-discrimination goal ... Thus, a plaintiff need not allege that he was discriminated against to fall within section 1691(d)'s zone of interests and qualify as an 'aggrieved person 'eligible to bring an ECOA notice claim."); *Valladares v. Specialized Loan Servicing, LLC,* 2023 WL 8435575, at *9–10 (E.D. Cal. Dec. 5, 2023).

**A. BMO's Credit Line Termination Letters Did Not Comply with ECOA's Strict Notice Requirement.**

Here, in order to be entitled to recover from BMO, Plaintiffs must prove the following elements: (1) BMO is a creditor, (2) Plaintiffs are credit applicants, (3) BMO took adverse action with respect to Plaintiffs' business loans, and (4) BMO failed to provide Plaintiffs with an ECOA-compliant notice of its adverse action. *See Stoyanovich v. Fine Art Cap. LLC*, No. 06 CIV.13158 (SHS), 2007 WL 2363656, at *2 (S.D.N.Y. Aug. 17, 2007); *Madrigal v. Kline Oldsmobile, Inc.,* 423 F.3d 819, 822 (8th Cir.2005).

First, ECOA defines a creditor as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit. 15 U.S.C. § 1691a(e). Here, it is undisputed that BMO extended business credit loans to Plaintiffs in the amount of $100,000 each. *See* SMF at, ¶¶5-6.

Second, ECOA defines applicant as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit. 15 U.S.C. § 1691a(b). Under ECOA, the term "person" means a natural person, a corporation, government or governmental subdivision or agency, trust, estate, partnership, cooperative, or association. 15 U.S.C. § 1691a(f). It is also undisputed that Plaintiffs, are persons as defined under the statute,

who applied for and were ultimately approved for a $100,000 line of credit by BMO. *See* SMF at, ¶¶1-4.

Third, ECOA defines "adverse action" as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C § 1691(d)(6). Here, BMO revoked Plaintiffs' existing lines of credit, precluding them from making any further credit advances, and demanding payment of any balance within 90 days from the date of the letter. *See* SMF at ¶¶7-10. Such conduct certainly constitutes adverse action as defined by ECOA.

Fourth, BMO's letters to Plaintiffs failed to provide notification that is compliant with ECOA. ECOA requires creditors to provide either (a) a "statement[ ] of reasons in writing as a matter of course to applicants against whom adverse action is taken" or (b) "written notification of adverse action which discloses (i) the applicant's right to a statement of reasons ..., and (ii) the identity of the person or office from which such statement may be obtained." 15 U.S.C. § 1691(d)(2). BMO's letters failed to provide any specific reason for terminating the lines of credit it had previously extended to Plaintiffs. *See* SMF at ¶7 and 9. Nor the did the letters disclose Plaintiffs' entitlement to such a statement. *Id.* BMO's complete and total explanation for taking adverse action against Plaintiffs is that BMO,"(t)o ensure compliance with federal regulations…(,) conducts regular reviews of customer relationships and account activity", to "identify any transaction or information that may not fit within the expectations of BMO or legal requirements" and that "as a result of this review, BMO is terminating the lending relationship you have with the Bank." *Id.* Neither the August 17, 2023 letter to PD Logistics nor the August 16, 2023 letter to Bans reflect what, if anything, BMO reviewed, nor do those letters identify any transaction or information that "may not fit within the expectations of BMO" or any transaction or information

that "may not fit legal requirements". *See* SMF at ¶¶17-20. Indeed, the letters do not provide *any* specific explanation for terminating Plaintiffs' lines of credit. *Id.* BMO's vague explanation - that any transaction or information may not fit within the expectations of BMO, or may not fit legal requirements, appeals to a metric of which Plaintiffs would have no knowledge. Each is thus insufficient because "it provides no guidance as to what standard or policy the creditor considered, thereby leaving the applicant clueless as to why they were denied." *Chen v. Chase Bank USA, N.A.*, 393 F. Supp. 3d 850, 854 (N.D. Cal. 2019).

BMO's general statement that "a transaction or information may not fit within the expectations of BMO or legal requirements", is too vague to satisfy ECOA's specificity requirement. Pursuant to ECOA, a statement of reasons must "contain[ ] the specific reasons for the adverse action taken." 15 U.S.C. § 1691(d)(3). Regulation B requires that the statement of reasons

> "be specific and indicate the principal reason(s) for the adverse action. Statements that the adverse action was based on the creditor's internal standards or policies or that the applicant, joint applicant, or similar party failed to achieve a qualifying score on the creditor's credit scoring system are insufficient."

12 C.F.R. § 202.9(b)(2). BMO did not provide Plaintiffs with a specific reason for terminating and accelerating payment on their credit lines. The actual reason or reasons for the revocation of the credit lines remained undisclosed, and Plaintiffs could only speculate as to what specific transaction or information somehow did not fit within BMO's expectations or legal requirements, or how, or why. Such a general statement does not satisfy the requirement of specificity stated in the statute and developed in the regulations. *See Fischl v. General Motors Acceptance Corp.,* 708 F.2d 143, 147 (5th Cir.1983); *cf.* 12 C.F.R. § 202, App. C (listing model statement of reasons

checklists). Nor does it comply with ECOA's purpose of informing consumers of weaknesses in their credit profiles in order for them to be able to take remedial measures. *See Fischl,* 708 F.2d at 148 (A statement of reasons could not be translated into "concrete criteria" and therefore the credit applicant "could neither improve his credit application, correct any misinformation in his credit record, or guard against discrimination, thus thwarting both the protective and educational objectives of the ECOA .").

Regulation B actually provides a "safe harbor" for a creditor to use forms created by the Federal Reserve Board that provide the type of language that plainly articulates a reason for adverse action. *See*, 12 C.F.R. § 1002.9(a),(2)(i), 12 C.F.R. § 1002, App. C. Form C-1. Yet BMO did not use either any of the form templates available, nor any language at all that would shed light on the reason for its revocation of the lines of credit here. Instead, it merely informed Plaintiffs that it was "terminating its lending relationship" following a review of "customer relationships and account activity." *See* SMF at ¶7 and 9. It did not describe what about the relationship, or what activity led it to revoke the lines of credit. If this language were a sufficiently specific "statement of specific reasons" for revocation, any creditor revoking any credit in any circumstance would use it, and the requirement of a "specific reason" for the creditor's decision would be entirely hollow and pointless. Instead, the Seventh Circuit has explained that a principal aim of the ECOA's notice requirement is that "[i]n those cases where the creditor may have acted on misinformation or inadequate information, the statement of reasons gives the applicant a chance to rectify the mistake." *Treadway v. Gateway Chevrolet Oldsmobile Inc.,* 362 F.3d at 977. The regulation explicitly prohibits certain types of vague statements, providing that "[s]tatements that the adverse action was based on the creditor's internal standards or policies or that the applicant, joint applicant, or similar party failed to achieve a qualifying score on the creditor's credit scoring system are

insufficient", 12 C.F.R. § 1002.9(b)(2). That is the exact vague and general statement that BMO used in its adverse action correspondences to Plaintiffs.

Courts in other jurisdictions have found such vague language to be in violation of ECOA's notice provisions. In *Stoyanovich v. Fine Art Cap. LLC*, the creditor simply identified "credit-related information obtained from sources other than consumer reporting agencies" as the reason for the adverse action. 2007 WL 2363656 (S.D.N.Y. Aug. 17, 2007). The creditor did not reveal what that "credit-related information" was, and thus "[t]he actual reason for the denial ... remained undisclosed." *Id.* at *6. The court found that the notice violated the notice requirements of ECOA and granted plaintiff's partial motion on the issue of liability. *Id.* at *7. Similarly, in *Fischl v. GMAC*, the Fifth Circuit held that "credit references are insufficient" was impermissibly vague because it was unclear whether the number of references was too low (a "quantitative inadequacy"), or whether the references themselves were negative (a "qualitative deficiency"). *Fischl v. GMAC*, 708 F.2d 143, 147 (5th Cir. 1983).

As such, the granting of Plaintiffs' motion for summary judgment on the issue of liability under ECOA is appropriate and warranted.

**B. BMO's Failure to Provide Sufficient Notice is an Actionable Claim Under ECOA, Regardless of Whether BMO Discriminated Against Plaintiffs.**

A plaintiff does not need to allege or prove that they are a member of a protected class to state a claim under the notice provision of ECOA. Without regard to allegations of discrimination, a creditor's failure to provide a written rejection notice is actionable under the ECOA. *See, e.g., Rayburn v. Car Credit Center Corp.*, No. 00 C 3361, 2000 WL 1508238, *2–3, 2000 U.S. Dist. LEXIS 14944, *7–8 (N.D.Ill. Oct. 6, 2000) (holding that although the ECOA addresses discriminatory lending practices, among other things, discrimination is not a prerequisite to every actionable ECOA claim).

In C*osta v. Mauro Chevrolet, Inc.*, 390 F.Supp.2d 720 (2005), the court explicitly stated that "without regard to allegations of discrimination, a creditor's failure to provide a written rejection notice is actionable under the ECOA." The court explained that "the plain language of the statute does not require allegations of discrimination." *Id. See also, Chen v. Chase Bank USA, N.A.*, 393 F. Supp. 3d 850, 852–53 (N.D. Cal. 2019) ("Plaintiff need not allege that Defendant denied him credit due to unlawful discrimination to fall within ECOA's zone of interests…").

Instead, the statute provides for two different potential ECOA violations: claims for discrimination (15 U.S.C. § 1691(a)) and claims for inadequate notice (15 U.S.C. § 1691(d)). These are separate causes of action with their own elements, one with substantive discrimination claims under 15 U.S.C. § 1691(a) and the other with procedural notice requirement claims under 15 U.S.C. § 1691(d). A plaintiff can pursue a notice violation claim without proving any discriminatory motive whatsoever. *See, e.g., Rayburn v. Car Credit Center Corp.*, 2000 WL 1508238, *2–3,(N.D.Ill. Oct. 6, 2000) (holding that although the ECOA addresses discriminatory lending practices, discrimination is not a prerequisite to actionable ECOA claim); *Williams v. Thomas Pontiac–GMC–Nissan–Hyundai*, 1999 WL 787488, *3 (N.D.Ill. Sept.24, 1999) (holding that allegation of creditor's failure to provide a written rejection notice, notwithstanding the absence of any charges of discrimination against plaintiff, is sufficient to state an ECOA claim); *Pinkett v. Payday Today Loans, LLC*, 1999 WL 592189, *1 (N.D.Ill. Aug.3, 1999) (observing that the plain language of the statute does not require allegations of discrimination); *Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720, 728–29 (N.D. Ill. 2005).

There is nothing in ECOA's notice provision that requires allegations of discrimination, and ECOA notice claims do not require the plaintiff to plead and prove discrimination." *Chen, supra, citing Green v. Central Mortgage Co.*, 148 F. Supp. 3d 852, 879 (N.D. Cal. 2015); *Davis*

*v. U.S. Bancorp,* 383 F.3d 761, 766 (8th Cir. 2004); Vasquez, 2013 WL 6001924 at *11)); *London v. Wells Fargo Bank, N.A.*, No. 2:17-CV-00687-KJM-AC, 2018 WL 621262, at *9 (E.D. Cal. Jan. 29, 2018); *Cooksey v. Select Portfolio Servicing, Inc.*, No. 2:14-CV-1237 KJM KJN, 2014 WL 4662015, at *4 (E.D. Cal. Sept. 18, 2014); *McMahon v. JPMorgan Chase Bank, N.A.*, No. 2:16-CV-1459-JAM-KJN, 2017 WL 2363690, at *3 (E.D. Cal. May 31, 2017) (same); Jochum v. Pico Credit Corp. of Westbank, 730 F.2d 1041, 1044 n.3 (5th Cir. 1984) ("The plaintiffs have not alleged any discrimination prohibited by § 1691(a) of the Act ... [n]evertheless, they have stated a cognizable claim under the Act should they prove, as alleged, that Pico as a creditor failed to comply with the separate and independent notification requirements of § 1691(d).").

Because section 1691(d) of the ECOA sets forth a notification requirement, separate and apart from the statute's anti-discrimination provisions, this Honorable Court should find that BMO's failure to provide a specific reason for its revocation of the credit lines it extended to Plaintiffs are violations of ECOA, and that its failure to provide the statutorily-required notice provided by 12 C.F.R. § 1002.9 (a) to Plaintiffs establishes liability for that separate ECOA claim; and the Court should enter judgment against Defendant BMO for its liability, with damages to be established at a separate hearing on damages or at the trial of this matter.

**C. BMO's Credit Line Termination Letters Also Violated ECOA by Failing to Provide Plaintiffs with an Anti-Discrimination Notice as Required by Regulation B, 12 C.F.R. § 1002.9(b)(2).**

Regulation B, codified at 12 C.F.R. § 1002.9, implements these ECOA notice requirements with detailed specifications for credit termination scenarios. *See* 12 CFR § 1002.9. Specifically, Section 1002.9(b)(1), titled ECOA Notice, requires creditors to provide notice that is substantially similar to the following: The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex,

marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is [name and address as specified by the appropriate agency or agencies listed in appendix A of this part]. The Seventh Circuit has characterized the ECOA notice requirement as both strict and purposeful. In *Treadway*, the court emphasized that the notice requirement serves as "a strong and necessary adjunct to the antidiscrimination purpose of the legislation, for only if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices." *Treadway,* 362 F.3d at 977.

BMO's adverse action letters that it sent to Plaintiffs inexplicably did not contain the ECOA antidiscrimination notice as required by 15 U.S.C. § 1691(d) and 12 C.F.R. § 1002.9(a)-(b). *See* SMF at ¶7 and 9. BMO's failure to include this notice establish its liability to Plaintiffs under ECOA for this separate violation committed against each of these two Plaintiffs, regardless of, and separate and apart from, any discriminatory intent against these two Plaintiffs, the other Plaintiffs, or the many others whom BMO also cancelled their loans. Accordingly, the Court should grant Plaintiffs' motion for partial summary judgment on liability for this separate ECOA notice violation.

**CONCLUSION**

The undisputed facts and evidence, namely the letters BMO sent to Plaintiffs terminating their lines of credit, make it clear that BMO did not comply with ECOA's strict notice requirements. As such, Plaintiffs must be awarded partial summary judgment on the issue of BMO's liability under the Equal Credit Opportunity Act.

**DATED:** MAY 8, 2026.

RESPECTFULLY SUBMITTED,

By: *_/s/ Angel P. Bakov_*
One of the Attorneys for Plaintiffs

Angel P. Bakov
**BAKOV LAW, LTD.**
One East Wacker Dr., Ste. 2510
Chicago, Illinois 60601
Telephone: (312) 880-1008
abakov@bakovlaw.com

Jeffrey G. Brown
**JEFFREY GRANT BROWN, P.C.**
65 West Jackson Boulevard, #107
Chicago, Illinois 60604
Telephone: (312)789-9700
*jeff@JGBrownlaw.com*