IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **PD LOGISTICS, LLC, an Illinois limited liability company; PAVLE DUROVIC; BANS, INC., an Illinois corporation; and, ARSENIJE NENEZIC, Individually and on Behalf of Others Similarly Situated,** | ) | **Case No. 25-cv-06559** |
| **Plaintiffs,** | ) | **Judge Sharon Johnson Coleman** |
| **v.** | ) | **Magistrate Judge Laura K. McNally** |
| **BMO BANK, N.A.,** | ) | |
| **Defendant.** | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## OVERVIEW

Plaintiff PD Logistics, LLC is an Illinois limited liability company, primarily owned and controlled by Pavle Durovic. In November of 2022, PD Logistics was issued a line of credit by Defendant BMO Bank, N.A. ("BMO") in the amount of $100,000.00. At no time from November 2022 through August 17, 2023, was PD Logistics ever in default under the terms of the credit line. And despite its good standing, BMO sent a letter to PD Logistics on August 17, 2023 informing it that, as a result of "regular reviews of customer relationships and account activity" that is conducted "to identify any transaction or information that may not fit within the expectations of BMO or legal requirements", "BMO is terminating the business lending relationship you have with the bank." See, Group Exhibit 1. This is the sole explanation provided by BMO as its statement of reasons for closing the line of credit. BMO did not inform

PD Logistics what the transaction or information was, or what did not fit within BMO's expectations or legal requirements.

The letter then recited "What this means for you:" to include: "You will not be able to make any credit advances on your credit line." and "If you have an outstanding balance…. It must be paid in full within 90 days…." BMO's letter to PD Logistics also failed to include the mandatory anti-discrimination statement required by Regulation B of the Equal Credit Opportunity Act, 12 C.F.R. Part 1002, § 1002.9 et seq. ("ECOA"), informing credit applicants that creditors cannot discriminate on the basis of race, color, religion, national origin, sex, marital status, age, or public assistance income and identifying the Federal agency that administers compliance with this law. *Id.*

Plaintiff Bans, Inc. experienced similar treatment: First applying for, being accepted for, and obtaining and utilizing a line of credit in the amount of $100,000.00 from BMO, then receiving letters from BMO cancelling the line of credit, even though Bans, Inc., was never in default. The letter that Bans Inc. received from BMO cancelling its credit line contained the exact same language as the letter BMO sent to PD Logistics. See, Group Exhibit 1.

As such, Plaintiffs PD Logistics, LLC and Bans, Inc., individually and on behalf of a class of similarly situated persons, by their attorneys, respectfully request that this Court enter an Order determining that this action alleging, *inter alia*, violations of the Equal Credit Opportunity Act, 820 ILCS 105/1 *et seq.* ("ECOA"), be certified as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2) and 23(b)(3); and that the following designated classes be certified, as follows:

A. All individuals or entities that had been provided with a line of credit by BMO

Bank, N.A. ("BMO") or who personally guaranteed such a line of credit, and who received notification in a form substantially the same as those forms attached hereto as Group Exhibit 1 that their line of credit was being terminated, and who were not in default, delinquent or inactive as to the line of credit, and who were not a party to BMO's Deposit Account Agreement for Personal and Business Accounts, within the period five years prior to the filing of this lawsuit.

(1) All individuals or entities that had been provided with a line of credit by BMO or who personally guaranteed such a line of credit, and who were not in default, delinquent or inactive as to the line of credit who received notification that their line of credit was being terminated, and who did not receive written notification that "The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is [name and address as specified by the appropriate agency or agencies listed in appendix A of this part]" within the period five years prior to the

filing of this lawsuit.

Excluded from the Class are Defendant and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

## I. Rule 23's Requirements For Certification Are Satisfied

Defendant is a "creditor" under the Equal Credit Opportunity Act, 15 U.S.C. § 1691(a); and 15 U.S.C.A. § 1691e ("ECOA"). Defendant is therefore required to provide a specific statement of reasons for the denial of credit. It is also required to provide a statement of reasons for the termination which discloses the identity of the person or office from which such statement may be obtained. Plaintiffs' claims seek injunctive relief and damages for Defendant's violations of ECOA.

Plaintiffs are "applicants" under ECOA, as they applied for and were ultimately approved for a $100,000 line of credit by BMO.

Rule 23 provides that, as soon as practicable after the commencement of an action brought as a class action, the Court shall determine by order whether it may be so maintained and describe those whom the Court finds to be members of the class. At this stage of the litigation, it is clear this case is suitable for class certification.

The Court may certify a class when the plaintiff demonstrates that the proposed class and proposed class representatives meet Rule 23(a)'s four prerequisites—numerosity, commonality, typicality, and adequacy of representation—and at least one of the three provisions of Rule 23(b). A district court has "broad discretion" in determining whether to certify a class. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

To be certified, a proposed class must satisfy the four requirements of Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23. If Rule 23(a) is satisfied, the proposed class must then fall within one of the three categories in Rule 23(b), which the Seventh Circuit has described as: "(1) a mandatory class action (either because of the risk of incompatible standards for the party opposing the class or because of the risk that the class adjudication would, as a practical matter, either dispose of the claims of non-parties or substantially impair their interests), (2) an action seeking final injunctive or declaratory relief, or (3) a case in which the common questions predominate and class treatment is superior." *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011). Finally, the class must "ascertainable," in that it must be "defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015).

The statutory scheme of ECOA explicitly anticipates the filing and certification of a

class action and class relief, providing for specific class relief the case of a class action; see, 15 U.S.C.A. § 1691e.

As shown below, the Class satisfies each of Rule 23(a)'s prerequisites, as well as the requirements for certification under Rules 23(b)(2) and (b)(3).

## II. Numerosity — Federal Rule of Civil Procedure 23(a)(1)

The 23(a)(1) numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impractical." There is no specific number required to satisfy this requirement, nor is a plaintiff required to state the exact number of potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). A class action may proceed upon estimates as to the size of the proposed class and "[t]he court is entitled to make common-sense assumptions that support a finding of numerosity." *Morris v. Risk Mgmt. Alternatives, Inc.*, 203 F.R.D. 336, 342 (N.D. Ill. 2001); *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met. *Pope v. Harvard Banchares, Inc.*, 240 F.R.D. 383, 387 (N.D. Ill. 2006).

Although no magic number exists for satisfying the numerosity requirement, the Seventh Circuit has held that "[e]ven if the class were limited to 40 [members] … that is a sufficiently large group to satisfy Rule 23(a) where the individual members of the class are widely scattered and their holdings are generally too small to warrant undertaking individual actions." *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969); see also *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349,

356 n.5 (3d Cir. 2013) ("While no minimum number of plaintiffs is required to maintain a suit as a class action … generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.") (internal quotation marks omitted). A plaintiff need not plead or prove the exact number of class members to establish numerosity, *see Marcial v. Coronet Ins. Co*., 880 F.2d 954, 957 (7th Cir. 1989), and the court may make common sense assumptions to determine numerosity, *see Arreola v. Godinez*, 546 F.3d 788, 797-98 (7th Cir. 2008).

The numerosity requirement is met here. BMO has provided responses to interrogatories indicating that, from January 2020 to the filing of the lawsuit, 68 persons (as defined by ECOA – includes corporations) and/or guarantors whose last name ended in -ic had their lines of credit terminated[1], and 5,262 persons and/or guarantors whose last name does not end in -ic had their lines of credit terminated. BMO granted 963 unsecured demand lines of credit in the amount of at least $100,000 in that same period; and 13,839 persons whose names do not end in -ic acted as guarantors on demand lines of credit issued by BMO during the class period.

Defendant's witnesses have asserted that several different forms of "adverse action" letters - telling Plaintiffs their line of credit was terminated - were sent to Plaintiffs, and that those letters were a "template"[2]. Defendant has also indicated that there was

---

[1] See, Exhibit 2, Defendant's Supplemental Response to Interrogatories Nos. 3, 4, 6 & 9.

[2] Defendant's Rule 30(b)(6) deposition witnesses testified on May 13 & 15, 2026; the transcripts were ordered, and Plaintiffs can provide the precise testimony when it is made available should Defendant dispute that testimony in their response to this motion.

a "bulk demarket", *e.g.,* termination, of approximately 41 loans at the same time as Plaintiffs' loans were terminated.

Plaintiffs have sought the identity of all persons who were granted an unsecured demand line of credit in the amount of at least $100,000 by BMO and who were subsequently sued and/or faced legal action for defaulting on said line of credit during the Class Period. BMO has objected, because, *inter alia*, "Plaintiff does not define 'line of credit'", Deft's Supp. Resp., Interrog. # 14, but BMO says it will provide a response once its "continuing" investigation is concluded.

Defendant has refused to provide class wide discovery thus far, so the precise number of class members and their addresses is presently unknown to Plaintiffs, but a common-sense assumption that the precise number of persons who fit the class definition may be ascertained from Defendant's books and records is warranted here. *Morris*, 203 F.R.D. 336 at 342. Accordingly, there is no legitimate question that at least 40 (and likely hundreds and possibly thousands more) persons are members of the Class. A more precise number of class members will be confirmed upon Defendant's production of a class list. Thus, the numerosity requirement of Rule 23(a)(1) is satisfied.

III. **<u>Commonality/Predominance - Federal Rule of Civil Procedure 23(a)(2) and 23(b)</u>**

The commonality element requires that "there are questions of law or fact common to the class", Fed. R. Civ. P. 23(a)(2), which predominate over any questions affecting only individual members. Courts recognize that there may be factual differences between class members, but "factual variations among class members' claims" do not

themselves "defeat the certification of a class." *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980), *cert. denied*, 451 U.S. 914 (1980); *Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir. 1992), *cert. denied*, 506 U.S. 1051 (1993).

Although either common questions of law or of fact can be used to support a class action, both exist here. The common questions of fact and law for the Class are:

> Whether the reason(s) Defendant provided to each class member for the termination of their credit is a specific reason for the termination;
>
> Whether each class member who received notification that their line of credit was being terminated received written notification of the identity of the federal agency responsible for enforcing compliance by BMO with ECOA;
>
> Whether the Court deems the statement of reasons provided to each member of the putative class contains specific reasons for the adverse action taken;
>
> Whether Defendant's letters violated ECOA;
>
> Whether Plaintiffs and the Class are entitled to actual, statutory, or other forms of damages, and other monetary relief and, in what amount(s);
>
> Whether Plaintiffs and the Class are entitled to increased damages based on the willfulness or recklessness of Defendant's conduct; and
>
> Whether Plaintiffs and the Class are entitled to equitable relief, including but not limited to injunctive relief mandating a different form on notice, and restitution.

Because there is a common nucleus of operative facts and legal issues, Plaintiffs satisfy the commonality requirement of § 5/2-801(2).

Rule 23(b)(3)'s predominance requirement provides that a class action may be maintained where the questions of law and fact common to members of the proposed class predominate over any questions affecting only individual members. *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 331-32 (N.D. Ill. 2006). Here, common questions

predominate for the classes because Defendant's prohibited conduct is *identical* with regard to all putative Class members. Thus, the predominance requirement is satisfied because liability will be decided predominately, if not entirely, based on common evidence of Defendant's conduct.

**IV. <u>Typicality — Federal Rule of Civil Procedure 23(a)(3)</u>**

Rule 23 also requires that Plaintiffs' claims be typical of those of the Class. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to the commonality requirement and is satisfied if Plaintiffs' claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). The existence of factual differences will not preclude a finding of typicality. *Id.* "Typicality does not mean identical, and the typicality requirement is liberally construed." *In re Neopharm, Inc. Securities Litig.*, 225 F.R.D. 563, 566 (N.D. Ill. 2004) (citation omitted).

The claims of a named plaintiff need only share "the same essential characteristics" as those of the class. *Id.* Indeed, "[s]imilarity of legal theory is more important than factual similarity . . . ." *Id.* (quoting *Harris v. City of Chicago*, 1998 WL 59873, at *5 (N.D. Ill. Feb. 9, 1998)).

Here, each claim is also based on the same legal theory and cannot be factually distinguished from the claims of absent Putative Class Members because each claim arises from identical conduct. Plaintiffs have thus met the typicality requirement of Rule 23(a)(3).

## V. <u>Adequacy of Representation - Federal Rule of Civil Procedure 23(a)(4)</u>

The final Rule 23(a) prerequisite requires that a proposed class representative "fairly and adequately protect the interests of the class." This factor requires that both a proposed class representative and its counsel have the ability to "zealously represent and advocate on behalf of the class as a whole." *Maxwell v. Arrow Fin. Services, LLC*, 2004 WL 719278, *5 (N.D. Ill. Mar. 31, 2004). The proposed class representative must not have claims that are "antagonistic or conflicting . . . with other members of the class," and must have a "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Id.* (internal quotations omitted). Furthermore, proposed class counsel must be competent and have the resources necessary to sustain the complex litigation necessitated by class claims; it is persuasive evidence that proposed class counsel have been found adequate in prior cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987).

In this case, no conflicts exist between Plaintiffs and the Putative Class members given the identical nature of their claims. *Rosario*, 963 F.2d at 1018. Moreover, Plaintiffs have the same interests as the proposed Class—obtaining relief from Defendant and ensuring that Defendant does not continue such conduct in the future.

Therefore, Plaintiffs have no interests antagonistic to the interests of the proposed Class. Furthermore, Plaintiffs have hired counsel who have regularly engaged in major complex litigation and class actions. Accordingly, both Plaintiffs and Plaintiffs' counsel will adequately represent the Class. Additionally, Plaintiffs respectfully request that this Court now appoint, pursuant to Rule 23(g)(3), Plaintiffs' counsel as

interim Class Counsel.[3]

## VI. Superiority — Federal Rule of Civil Procedure 23(b)(3)

Rule 23(b)(3)'s superiority element requires a showing that "a class action is superior to the available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P 23(b)(3). Rule 23(b)(3) provides that matters pertinent to a finding of superiority include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

The instant class action is superior to other available methods for the fair and efficient adjudication of Plaintiffs' and the Class' claims. The burden and expense of individual prosecution of the litigation necessitated by Defendant's actions makes a class action superior to other available methods of resolution. *See Burns*, 2006 WL 3754820 at *10. This is especially so given that many of the putative class members here may already have been sued (as Plaintiffs were) by either Defendant or its assignees once their lines of credit were terminated, and have already incurred what is likely to be a substantial expense of defending that litigation. The Court may take judicial notice of other cases filed by or through BMO against debtors whose lines of credit were terminated; *see, e.g., Cavalry SPV I LLC v. Rachel Mireles,* 2026 AR

---

[3] Proposed Class Counsel's credentials and experience are set forth in the attached Exhibit 3.

00000642, DuPage County Circuit Court; BMO Bank, N.A. v. Niburu Freight Inc., 24L 2214, Circuit Court of Cook County Illinois; BMO Bank, N.A. v. Marius Poniewozik, 2025LA001420, 18th Judicial Circuit, DuPage County, Illinois. Thus, absent a class action, it would be difficult, if not impossible, for the individual members of the Class to obtain effective relief for these specific violations. Maintenance of this case as a class action is also superior to other available methods because it would avoid the necessity for multiple adjudications of identical legal and factual issues, thereby reducing the burden on the judiciary.

**VII. Declaratory and Injunctive Relief — Federal Rule of Civil Procedure 23(b)(2)**

Rule 23(b)(2) provides that the party opposing certification must have acted or failed to act on grounds generally applicable to the proposed class, "so that final injunctive relief or corresponding declaratory relief is appropriate . . . ." Fed. R. Civ. P. 23(b)(2). In this case, Defendant acted - by allegedly sending defective notices to the entire class - and failed to act - by failing to include required reasons for the termination of loans, and contact information for the appropriate federal agencies and contract persons - on grounds generally applicable to the Class as a whole, making final injunctive relief necessary to protect Plaintiffs and the Class from such conduct in the future, and satisfying the requirements of Rule 23(b)(2).

For the reasons stated above, this case is appropriate for class certification.[4]

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class,

[4] Plaintiffs reserve the right to amend the class definitions at the conclusion of class wide discovery.

respectfully request that the Court enter an Order:

A. Granting Plaintiffs' Motion for Class Certification;

B. Certifying the Classes of individuals as defined above;

C. Appointing Plaintiffs as the Class Representatives;

D. Appointing Jeffrey Grant Brown of Jeffrey Grant Brown, P.C., and Angel P. Bakov of Bakov Law, Ltd., as interim Class Counsel;

E. Directing that notice be provided to the certified classes by U.S. Mail and by email, within 5 days of receipt of a class list from Defendant, giving class members 45 days after mailing to opt out; and

F. Granting such other or further relief as this Court deems reasonable and just.

Dated: May 18, 2026

RESPECTFULLY SUBMITTED,

By: */s/ Jeffrey G. Brown*
One of the Attorneys for Plaintiffs

Jeffrey G. Brown
**JEFFREY GRANT BROWN, P.C.**
65 West Jackson Boulevard, #107
Chicago, Illinois 60604
Telephone: (312)789-9700
*jeff@JGBrownlaw.com*

Angel P. Bakov
**BAKOV LAW, LTD.**
One East Wacker Dr., Ste. 2510
Chicago, Illinois 60601
Telephone: (312) 880-1008
abakov@bakovlaw.com

**Attorneys for Plaintiffs**

Certificate of Service

The undersigned, an attorney, hereby certifies that he caused this notice and the above referenced document to be filed, using the CM/ECF system, which will send notification of such filing to all Filing Users, on this 18th day of May, 2026.

Respectfully submitted,

*/s/ Jeffrey Grant Brown*
One of Plaintiffs' Attorneys

Jeffrey Grant Brown
Jeffrey Grant Brown, P.C.
65 West Jackson Blvd., #107
Chicago, IL 60604
312.789.9700
Jeff@JGBrownLaw.com