**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PD LOGISTICS, LLC, an Illinois limited liability company; PAVLE DUROVIC; BANS, INC., an Illinois corporation; and ARSENIJE NENEZIC,** | ) | |
| | ) | **Case No. 25-cv-06559** |
| **Plaintiffs and Counter-Defendants,** | ) | |
| | ) | **Judge Sharon Johnson Coleman** |
| **v.** | ) | |
| | ) | **Magistrate Judge Laura K. McNally** |
| **BMO BANK N.A.,** | ) | |
| | ) | |
| **Defendant and Counter-Plaintiff.** | ) | |

**BMO BANK N.A.'s Opposition to Plaintiffs' Motion for Class Certification**

Jeffrey Jamison
Meredith Pike
BMO Financial Group
320 S. Canal Street – Floor 7
Chicago, Illinois 60606
Telephone: (312) 461-4694
Jeffrey.Jamison@bmo.com
Meredith.Pike@bmo.com
*Attorney for BMO Bank N.A.*

Plaintiffs pleaded one case and now ask the Court to certify another. Their Complaint alleges discrimination: BMO, they say, terminated the credit lines of customers "of Eastern European ethnicity or national origin" whose "last names end in '-ic'." (Compl. ¶¶ 41, 54.) That is the class the Complaint defines, and intentional discrimination under 15 U.S.C. § 1691(a) is the only ECOA claim it pleads. (Compl., Count II.) The certification motion leaves all of it behind. It proposes a class defined not by ethnicity but by the receipt of an allegedly deficient adverse-action notice — a notice claim under § 1691(d) and 12 C.F.R. § 1002.9 that appears nowhere in the Complaint. Why the switch? Plaintiffs' own numbers answer the question: of the roughly 5,330 terminations they identify, some 5,262 — more than 98% — involved persons whose names do not end in "-ic." (Pls.' Mem. at 7.) A theory of discrimination cannot survive those figures, so Plaintiffs have traded it for a different theory altogether. But a party cannot certify a class its complaint never pleaded, on claims its complaint never brought.

The switch does not save the motion, because the proposed class fails on its own terms. Start with the representatives. Plaintiffs drafted a class that excludes anyone who was "a party to BMO's Deposit Account Agreement" — and both named Plaintiffs held BMO deposit accounts, which appears to read them out of the very class they seek to lead. They also lack standing to press the notice claim: PD Logistics' own corporate designee testified that the missing notice would have changed "[n]o, nothing." (Durovic Dep. 313:22–314:17.) Then turn to the class itself. Membership hinges on whether each borrower was "not in default" — a merits question answerable only account by account—potentially thousands of mini-trials, which makes the class a textbook fail-safe. And the questions Plaintiffs call common are nothing of the sort: whether each termination related to that borrower's default, what BMO told each borrower beyond the form letter, and whether any given member was harmed at all are questions with individual

answers, not class-wide ones. *Wal-Mart Stores, Inc. v. Dukes* , 564 U.S. 338 (2011), forbids certification on that record. Finally, Plaintiffs filed a merits summary-judgment motion ten days before they moved to certify, on the same briefing schedule — inviting the very one-way intervention Rule 23 exists to prevent. The motion should be denied.

**LEGAL STANDARD**

Rule 23 "does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The party seeking certification "must affirmatively demonstrate" its compliance — it "must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.* That demonstration takes a "rigorous analysis," one that often "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 350–51; see *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675–76 (7th Cir. 2001) (a court may not take the complaint's allegations as true on certification). And the class must be "defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). Plaintiffs satisfy none of these requirements. Indeed, Plaintiffs do not clear the threshold of citing the correct law. Their motion identifies the statute they sue under — the Equal Credit Opportunity Act — as "820 ILCS 105/1 et seq.," which is the Illinois Minimum Wage Law, and grounds its commonality argument in "§ 5/2-801(2)," the Illinois class-action statute, rather than Rule 23. (Pls.' Mem. at 2, 9.) A motion asking this Court to bind thousands of absent members should, at a minimum, invoke the right statutes — and the analysis that follows shows the errors are not confined to the citations.

**ARGUMENT**

**I. The Motion Seeks Certification of an Unpleaded Class Asserting Unpleaded Claims.**

A certification motion is measured against the case the complaint actually pleads — and this one pleads a case Plaintiffs have stopped litigating. The Complaint defines its class by ethnicity: "All individuals of Eastern European ethnicity or national origin or heritage, whose last names end in '-ic', and all entities owned by such individuals," whose credit lines were cancelled. (Compl. ¶ 54.) Its theory matches its class: BMO "embarked on a campaign of unilaterally cancelling the lines of credit . . . of its Eastern European foreign national customers, because of their ethnicity or national origin and because their last name ended in 'IC'." (Compl. ¶ 41.) The lone ECOA count pleads— intentional discrimination under 15 U.S.C. § 1691(a), under the caption "Violation of ECOA – Discrimination Based on National Origin." (Compl. ¶¶ 86–97.)

The motion certifies none of that. Its proposed "Class A" and subclass drop ethnicity entirely; they are defined instead by the receipt of a letter "in a form substantially the same as" Group Exhibit 1 and by the absence of the Regulation B anti-discrimination notice — the elements of a § 1691(d) and § 1002.9 notice claim the Complaint never brought. (Pls.' Mem. at 2–4.) A plaintiff "may not amend his complaint through arguments in his brief," *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012), and surely may not do it through a certification motion, swapping in an unpleaded class to pursue unpleaded claims. Courts in this district have specifically held that an "attempt to amend the complaint through the motion for class is inappropriate. And the class-certification issue must be decided based on the definition stated in the complaint." *Cwiak v. Flint Ink Corp.*, 186 F.R.D. 494, 497 (N.D. Ill. 1999); *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 672 n.3, 680 n.10 (N.D. Ill. 1989) (refusing to certify claims and a class not in the complaint). See *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1060 (7th Cir. 2016) (certification is assessed against causes of action in the complaint); *Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 811 (7th Cir. 2012) (explaining that*

*predominance asks whether common evidence can resolve the elements of the claim for the class)* The vehicle for litigating a different case is a motion to amend under Rule 15 — which BMO would oppose, including as futile — not a motion to certify. This alone supports denial.

And make no mistake about why the class was redrawn. Plaintiffs' own numerosity evidence recites that, since January 2020, 68 persons or guarantors with "-ic" surnames had lines terminated — against 5,262 whose names do not end in "-ic." (Pls.' Mem. at 7 & n.1.) That is roughly 98.7% of the terminations falling outside the pleaded ethnic class, a figure impossible to reconcile with a "campaign" against Eastern European customers. Nor can the named Plaintiffs supply from their own knowledge what the numbers withhold. Durovic testified that, beyond the drivers he worked with, he knew of no other Eastern European business whose account was closed, could name none, and had heard of other closures only by overhearing two customers talking at a bakery counter. (Durovic Dep. 103:16–105:21.) Nenezic did no better: asked to identify the discrimination behind his own claim, he could offer only that his line was canceled and his surname ends the way others' do. (Nenezic Dep. 174:10–11, 178:19–21.) Faced with that record, Plaintiffs did not defend the discrimination class. They replaced it. Rule 23 does not permit the trade.

The substitution is not even Plaintiffs' last word. They "reserve the right to amend the class definitions at the conclusion of class-wide discovery." (Pls.' Mem. at 13 n.4.) So the definition before the Court is one that has been swapped once already and may be swapped again. A class defined on those terms cannot withstand the rigorous analysis Rule 23 requires: the Court cannot test predominance, ascertainability, or typicality against a target Plaintiffs will not hold still, and BMO cannot be made to defend against one. *Wal-Mart*, 564 U.S. at 350; *Szabo*, 249 F.3d at 675–76. Rule 23(c)(1)(C) is no answer; it lets a court adjust a certification order entered after rigorous

analysis — it does not excuse a movant from defining the class it wants certified in the first place. The Court must judge the class Plaintiffs actually propose, and that class fails.

## II. The Named Plaintiffs Cannot Represent the Proposed Class.

### A. Plaintiffs Are Excluded from Their Own Class Definition.

Plaintiffs wrote a class definition that excludes them. Proposed Class A reaches only those "who were not a party to BMO's Deposit Account Agreement for Personal and Business Accounts." (Pls.' Mem. at 3.) But both named Plaintiffs held BMO deposit accounts governed by that agreement. (Compl. ¶¶ 25–27, 38, Ex. 1, at 2, 6, 9–10; Pls.' Grp. Ex. 1.) A named plaintiff who falls outside the class cannot represent it. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); Fed. R. Civ. P. 23(a) (representative must be a "member[] of a class"). And Plaintiffs cannot construe their way out of the bind: read the carve-out narrowly enough to keep them in, and it drags along a deposit agreement that contains arbitration and class action waiver provisions, whose enforceability would raise its own individualized questions and defeat predominance; read it as written, and the representatives are outside their own class. Either way, they cannot lead it.

That is not the only way the definition reaches past the named Plaintiffs. Class A also excludes anyone "in default, delinquent or inactive as to the line of credit." (Pls.' Mem. at 2–3.) Yet PD Logistics' own Rule 30(b)(6) designee described conduct squarely at odds with the Letter of Agreement: he agreed the line was "not supposed to be used for any personal expenses" (Durovic Dep. 93:14–21), then acknowledged drawing on it to pay credit-card balances and cycling the funds "back on the credit line" (id. 254:20–255:2; 258:14–259:18), and paying himself and personal utilities from the commingled account (id. 272:7–273:12) — conduct contrary to the agreement's use-of-proceeds covenant and its flat bar on using Advances to repay BMO. (Compl. Ex. 1, PageID #:40–41.) Schedule E ¶ 2 makes any such breach an Event of

Default. (Id., PageID #:43.) Whether an Event of Default in fact occurred is contested — but that is exactly the point: the named Plaintiffs cannot show on this record that they satisfy their own "not in default" criterion, a second reason they may stand outside the class they ask to lead.

**B. The Named Plaintiffs Lack Article III Standing to Assert the Notice Claims on Which the Class Is Built.**

A representative without standing represents no one. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002). As further explained in BMO's contemporaneously filed summary-judgment opposition, the record forecloses any concrete injury traceable to the alleged notice defect. PD Logistics' designee said the omitted anti-discrimination notice would have changed "[n]o, nothing" (Durovic Dep. 313:22–314:17); every harm he named flows from the termination of an at-will demand facility the contract authorized, not from anything the letter said (Compl. ¶ 16; Durovic Dep. 121–153, 233:19–236:19); and he did not read the letter for some 45 days (Durovic Dep. 220:1–221:3, 232:14–233:6). The guarantors stand worse still: as Part III.E explains, a guarantor is not an ECOA "applicant" and has no notice claim to assert at all. Representatives who could not win their own notice claim cannot be deputized to press it for a class.

**C. The Named Plaintiffs Are Atypical and Inadequate Because They Are Subject to Unique, Preoccupying Defenses.**

Even setting membership and standing aside, the named Plaintiffs are the wrong champions for this class, because each is saddled with defenses no absent member shares. "The presence of even an arguable defense peculiar to the named plaintiff . . . may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011). Here those peculiar defenses are not hypothetical. Each Plaintiff's termination followed

an individualized review of its own account: BMO's Rule 30(b)(6) designee testified that PD Logistics' loan proceeds were disbursed and used immediately, that income available for repayment was "minimal to none," and that the payments showed no business purpose; that the same determination was reached as to Bans; and that Bans was separately reviewed through BMO's anti-money-laundering unit. (Bernitt Dep. 22:1–24:2; Stentz Dep. 115:9–120:2.) PD Logistics' designee confirmed much of the underlying conduct himself. (Durovic Dep. 254:20–255:2; 258:14–259:18; 272:7–273:12.) Those facts hand BMO defenses aimed squarely — and only — at these Plaintiffs: the Regulation B default exclusion, 12 C.F.R. § 1002.2(c)(2)(ii), and breach-of-covenant and account-conduct defenses that would be the centerpiece of any trial of their claims. On top of that, both Plaintiffs are counter-defendants in BMO's claims alleging fraud and participation in a racketeering scheme — litigation the absent members do not share and that will consume the representatives' attention. (BMO's Answer & Countercls., ECF No. 35.) A party busy defending its own conduct is not an adequate champion for a class whose claims Plaintiffs insist turn solely on the face of a form letter.

Timing sharpens the mismatch. PD Logistics and Bans were terminated in August 2023, within the window of the review BMO has described; the great bulk of the terminations Plaintiffs count occurred years earlier, under different criteria and different decisionmakers. (Pls.' Mem. at 7 & n.1.) Representatives whose terminations came out of a review most of the class never underwent are not typical of the class they would lead. *Id.*

**III. The Proposed Class Cannot Be Certified Under Rule 23(a) or Ascertained.**

**A. The Class Definition Is Fail-Safe and Not Based on Objective Criteria.**

Even with proper representatives, this class could not be certified, because it is neither ascertainable nor defined by objective criteria. Class A turns on two things: that a person (1)

received a letter "in a form substantially the same as" Group Exhibit 1, and (2) was "not in default, delinquent or inactive as to the line of credit." (Pls.' Mem. at 2–3.) Neither works. "Substantially the same" is not an objective standard; it demands a letter-by-letter judgment of similarity — and Plaintiffs' own motion concedes that BMO used "several different forms of 'adverse action' letters." (Pls.' Mem. at 7 & n.2.) See *Mullins*, 795 F.3d at 659–60.

The second element is worse, because it is the merits wearing a definition's clothing. Whether an "Event of Default" occurred under a given borrower's Letter of Agreement — breaches of representations, warranties, and covenants, cross-defaults, material adverse changes — is an account-specific question BMO could not answer even for the two named Plaintiffs without discovery into matters "solely within [the borrowers'] or third parties' knowledge." (Pls.' MSJ Ex. 4, Resps. to RFA Nos. 29–30.) And because Regulation B pulls out of "adverse action" anything "taken in connection with . . . default, or delinquency," 12 C.F.R. § 1002.2(c)(2)(ii), the default carve-out makes membership rise and fall with liability itself. That is the very definition of a fail-safe class: "a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). Heads, the class wins; tails, it was never in the class. Nor is the problem theoretical. Establishing whether even the two named Plaintiffs meet the "not in default" criterion took a full day of Rule 30(b)(6) testimony — testimony that surfaced conduct at odds with the Letter of Agreement's covenants (Durovic Dep. 254:20–255:2; 258:14–259:18; 272:7–273:12). Multiply that inquiry across every absent borrower, before anyone can know who is even in the class, and the definition collapses of its own weight. Small wonder Plaintiffs reserve the right to rewrite it. (Pls.' Mem. at 13 n.4.)

**B. Commonality and Predominance Fail Under Wal-Mart: The Claims Turn on Individualized Answers.**

Commonality asks not whether a class shares questions but whether it can produce "common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350. What matters are "[d]issimilarities within the proposed class," because those are "what have the potential to impede the generation of common answers." *Id.* This class is all dissimilarity. Plaintiffs' own "common" questions give the game away: they ask whether "the reason(s) Defendant provided to *each class member*" were specific, and whether "*each class member* . . . received written notification" of the enforcing agency. (Pls.' Mem. at 9 (emphases added).) Those questions are phrased member-by-member because member-by-member is the only way they can be answered.

First, the default exclusion demands a borrower-by-borrower march through each account's conduct and each agreement's Events of Default. 12 C.F.R. § 1002.2(c)(2)(ii). Second, *TransUnion* requires that "[e]very class member" have "Article III standing in order to recover individual damages," 594 U.S. at 431, and injury from a notice is irreducibly individual — as the named Plaintiffs' own "No, nothing" shows. A class defined by who received a letter necessarily sweeps in members who, like PD Logistics, would have done nothing differently and lost nothing at all. Third, Plaintiffs concede that BMO used several letter forms, so even the content of the challenged notice varies from member to member (Pls.' Mem. at 7 & n.2) — and BMO has denied that the form letters captured everything it told a given borrower, pointing to additional documents as to Bans (Pls.' MSJ Ex. 4, Second Supp. Resp. to RFA No. 20). What each member was told is thus its own inquiry. Fourth, the class reaches terminations that cannot share a cause with the named Plaintiffs'. The Complaint's theory is sequential — BMO suffered an "episode of fraud," and "[t]herefore, and thereafter" began terminating lines. (Compl. ¶¶ 81–82.) But the very interrogatory answers Plaintiffs cite for numerosity date BMO's review to

December 2022 and tie it to neutral parameters: trucking-industry entities that opened unsecured business lines through BMO's online platform between roughly May and November 2022. (Pls.' Mem. at 7 & n.1 (citing BMO's Supp. Answers to Interrog. Nos. 3–4).) Plaintiffs' counts nonetheless reach back to January 2020 — terminations by different people, under different criteria, for different reasons, that cannot yield a common answer with the August 2023 terminations at the heart of this case. On this record the individualized questions — default, communications, injury, damages — do not merely outweigh the common ones. They are the case. Predominance fails for the same reasons. *Comcast*, 569 U.S. at 34.

**C. Individualized Defenses and Counterclaims Defeat Typicality and Predominance.**

Certification fails because the same borrower-specific defenses and counterclaims that BMO would assert against the named Plaintiffs would have to be adjudicated, one member at a time, against every absent class member. BMO did not terminate these demand facilities pursuant to any uniform policy susceptible to common proof; it terminated each line following an individualized risk review that turned on borrower-specific facts — repayment capacity, disbursement patterns, and indicia of fraud unique to each relationship. Resolving whether BMO's stated reason was adequate as to any given borrower therefore requires a facility-by-facility inquiry into that borrower's account, conduct, and the specific basis for termination.

That defeats typicality. A class representative is not typical where the representative's claim will be "subject to defenses" that require the court to focus on the representative's own conduct rather than on proof common to the class. *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724–26 (7th Cir. 2011). BMO's defenses here are not unique to the named Plaintiffs; they extend across the putative class — and precisely because they do, they inject individualized questions into every class member's claim.

It also defeats predominance. Under Rule 23(b)(3), an individualized affirmative defense undermines predominance where adjudicating it "would require a court to assess whether an array of different factual circumstances" resolve the defense for each member; "it is the method of determining the answer and not the answer itself that drives the predominance consideration." *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 845 (7th Cir. 2022). BMO need not show that its defenses would ultimately prevail against any particular member; it is enough that resolving them requires borrower-specific proof. *Id.* Layered atop BMO's counterclaims — which likewise turn on each borrower's individual conduct — those individualized inquiries would fracture any trial into a series of mini-trials and overwhelm the single common question Plaintiffs identify. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

**D. Numerosity Is Unsupported for the Class as Defined.**

Numerosity is not a box Plaintiffs may simply check, and they have not carried it. Their figures count terminations at large — not people who meet the class definition they actually propose. Nothing in the record counts persons who (1) received a letter "substantially the same" as Group Exhibit 1, (2) were not in default, delinquent, or inactive, and (3) were not parties to the Deposit Account Agreement. On the not-in-default element in particular, Plaintiffs offer no evidence — none — that any absent borrower qualifies, an element BMO could not concede even as to the named Plaintiffs. The guarantor figures (13,839 non-"ic" guarantors) pad the count with individuals who are not ECOA "applicants" at all. See Part III.E. And the deposition testimony Plaintiffs lean on, they concede they do not yet have: "the transcripts were ordered, and Plaintiffs can provide the precise testimony when it is made available." (Pls.' Mem. at 7 n.2.)

Rule 23 runs on proof, not promissory notes. *Wal-Mart*, 564 U.S. at 350; *Szabo*, 249 F.3d at 675–76.

**E. The Class Definition Sweeps In Guarantors, Who Are Not "Applicants" Entitled to ECOA Notice.**

A further overbreadth is built into both proposed classes: they sweep in guarantors, who have no ECOA notice claim to begin with. The inclusion is deliberate — Plaintiffs' numerosity evidence counts guarantors separately and by the thousands, 13,839 of them. (Pls.' Mem. at 7 & n.1.) But ECOA's notice duty runs to an "applicant," 15 U.S.C. § 1691(d) — a person "who applies to a creditor directly for an extension, renewal, or continuation of credit," *id.* § 1691a(b). A guarantor does not apply for credit. The borrower does.

The Seventh Circuit has drawn exactly that line: "[t]here is nothing ambiguous about 'applicant' and no way to confuse an applicant with a guarantor," and stretching "applicant" to embrace "guarantor" would "open[] vistas of liability that the Congress that enacted the Act would have been unlikely to accept." *Moran Foods, Inc. v. Mid-Atlantic Market Dev. Co.*, 476 F.3d 436, 441 (7th Cir. 2007). The Eighth Circuit agrees. *Hawkins v. Community Bank of Raymore*, 761 F.3d 937, 941–42 (8th Cir. 2014), *aff'd by an equally divided Court*, 136 S. Ct. 1072 (2016). Regulation B's broader definition, 12 C.F.R. § 1002.2(e), rested on deference that *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412–13 (2024), has since rejected: courts must exercise independent judgment in determining whether an agency has acted within its statutory authority.

The Court need not definitively resolve that disagreement to deny certification. Although *Estate of Davis* characterized *Moran Foods'* discussion of guarantors as dicta, *Moran Foods* remains persuasive Seventh Circuit authority that the statutory term "applicant" does not include a guarantor. *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 538 (7th Cir. 2011); *Moran*

*Foods, Inc. v. Mid-Atlantic Market Development Co.*, 476 F.3d 436, 441 (7th Cir. 2007). Other courts disagree, and the Supreme Court's equally divided affirmance in *Hawkins* did not resolve the issue nationally. See *RL BB Acquisition, LLC v. Bridgemill Commons Development Group*, 754 F.3d 380, 385–86 (6th Cir. 2014); *Hawkins v. Community Bank of Raymore*, 761 F.3d 937, 941–42 (8th Cir. 2014), aff'd by an equally divided Court, 577 U.S. 495 (2016). That unresolved threshold issue reinforces, rather than cures, the certification defect. Plaintiffs have combined borrowers and thousands of guarantors in a single class without establishing that guarantors possess the notice claim on which certification depends.

BMO does not overstate the point. The *Moran Foods* discussion has been called dicta, *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 538 (7th Cir. 2011), and the Sixth Circuit has come out the other way, *RL BB Acquisition, LLC v. Bridgemill Commons Development Group*, 754 F.3d 380, 385–86 (6th Cir. 2014). The Supreme Court's equally divided affirmance in *Hawkins* did not resolve the disagreement nationally. *Hawkins v. Community Bank of Raymore*, 761 F.3d 937, 941–42 (8th Cir. 2014), aff'd by an equally divided Court, 577 U.S. 495 (2016). The Court need not definitively resolve that disagreement to deny certification. At minimum, the disagreement presents a threshold question that Plaintiffs were required to confront before combining borrowers and thousands of guarantors in the same proposed classes. Plaintiffs neither separate the two groups nor establish that guarantors possess the notice claim on which certification depends. Their guarantor count therefore cannot simply be assumed to support numerosity, and a class that includes persons who may have no claim at all is materially overbroad. See *Messner*, 669 F.3d at 824–25. Plaintiffs' failure to address that threshold defect also falls short of the rigorous analysis Rule 23 requires. See *Wal-Mart*, 564 U.S. at 350–51.

**IV. Rule 23(b)(2) Certification Is Foreclosed.**

Rule 23(b)(2) is no option here, because it "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart*, 564 U.S. at 360–61. Plaintiffs seek actual, statutory, and punitive damages for every member (Pls.' Mem. at 9; Compl., prayers for relief); the injunctive relief they gesture at — "mandating a different form o[f] notice" — is incidental to the money that drives the case. And in any event the named Plaintiffs have no standing to seek prospective relief: their lines were terminated in August 2023, their BMO relationships are over, and they face no real and immediate threat of a future BMO adverse-action notice. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). A (b)(2) class cannot rest on representatives with nothing to enjoin.

**V. A Class Action Is Not Superior, and the Class Would Be Unmanageable.**

A class action is not the superior method for resolving these claims — far from it. The individualized issues already cataloged in Part III.B — default, the communications each member received, standing, damages — would swallow any class trial, and that alone defeats superiority. Fed. R. Civ. P. 23(b)(3)(D). Plaintiffs' own argument makes matters worse: they stress that many putative members "may already have been sued" by BMO or its assignees for defaulting on the very lines at issue. (Pls.' Mem. at 12–13.) Members enmeshed in their own collection suits carry with them counterclaims, setoffs, res judicata problems, and — under Plaintiffs' own fail-safe definition — fights over whether their alleged defaults put them outside the class to begin with. That is a portrait of unmanageability, not superiority.

**VI. Certification on This Record Would Sanction Impermissible One-Way Intervention.**

Finally, the posture Plaintiffs have engineered is itself a reason to deny certification now. They filed their merits summary-judgment motion on May 8, 2026 — ten days before moving to

certify — and both on the same schedule, asking the Court to decide class-wide "liability" before any class is certified or notice goes out. The bar on one-way intervention exists to prevent exactly that: absent members waiting on a merits ruling they can join if it is favorable and disclaim if it is not. See *Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 353–54 (7th Cir. 1975); *Costello*, 810 F.3d at 1057–58. Should the Court reach the summary-judgment merits first — as Plaintiffs' own sequencing invites — certification afterward would be improper; and the choice to sequence the motions this way is itself reason to doubt Plaintiffs' stewardship of absent members' interests.

**CONCLUSION**

Plaintiffs ask the Court to certify a class their Complaint never pleaded, on claims it never brought, defined in fail-safe and subjective terms, led by representatives who appear to fall outside the class, lack standing, and carry defenses no absent member shares — all while a premature merits motion sits on the same calendar. Rule 23 does not permit any of it. For the foregoing reasons, Defendant BMO Bank, N.A. respectfully requests that the Court deny Plaintiffs' Motion for Class Certification in its entirety, deny the request to appoint interim class counsel, and grant such other and further relief as the Court deems just and proper.

Dated: August 25, 2026

Respectfully Submitted,

Jeffrey Jamison

/s/ Jeffrey Jamison
One of BMO's Attorneys
BMO Financial Group
320 S. Canal Street – Floor 7
Chicago, Illinois 60606
Telephone: (312) 461-4694
Jeffrey.Jamison@bmo.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was filed through the Court's electronic filing system and served on Plaintiffs' counsel via email on August 25, 2026. Parties of record may obtain a copy through the Court's CM/ECF system.

/s/ Jeffrey E. Jamison