**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PD LOGISTICS, LLC, an Illinois limited liability company; PAVLE DUROVIC; BANS, INC., an Illinois corporation; and ARSENIJE NENEZIC,** | ) | |
| **Plaintiffs and Counter-Defendants,** | ) | **Case No. 25-cv-06559** |
| **v.** | ) | **Judge Sharon Johnson Coleman** |
| **BMO BANK N.A.,** | ) | **Magistrate Judge Laura K. McNally** |
| **Defendant and Counter-Plaintiff.** | ) | |

BMO BANK N.A.'s OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY UNDER THE EQUAL CREDIT OPPORTUNITY ACT

Jeffrey Jamison
Meredith Pike
BMO Financial Group
320 S. Canal Street – Floor 7
Chicago, Illinois 60606
Telephone: (312) 461-4694
Jeffrey.Jamison@bmo.com
Meredith.Pike@bmo.com
*Attorney for BMO Bank N.A.*

Plaintiffs PD Logistics, LLC and Bans, Inc. move for partial summary judgment on ECOA liability against BMO Bank, N.A. But summary judgment is supposed to take a claim a plaintiff has pleaded and show that it wins on undisputed facts, and Plaintiffs' motion does something else. It seeks judgment on two claims that appear nowhere in their Complaint — that BMO's August 2023 letters gave too few reasons, and that they omitted a boilerplate anti-discrimination notice — on a record that disproves the very injury those claims require.

Start with the pleading. The Complaint states a single ECOA claim: national-origin discrimination under § 1691(a). The allegations about BMO's letters were there to show that the bank's stated reason was pretext — evidence of a discriminatory motive, not a freestanding wrong. Plaintiffs cannot turn that evidence into two new causes of action in a dispositive motion, without amending, without leave, and without notice to anyone.

Even if the claims were in the case, they would not belong in this Court. Standing takes a concrete injury, and the record forecloses one: both designees testified, more than once, that everything they lost flowed from the termination of their credit lines, not from anything the letters said. One never received the letter for months; the other did not see it for forty-five days. Asked whether the missing disclosure would have changed anything, PD Logistics' designee answered: "No, nothing." What is left is that Plaintiffs would have asked questions — but an inquiry is not an injury.

And even if standing existed, the facts are disputed at every step — whether the terminations were "adverse action" at all, given Plaintiffs' own testimony concerning their use of loan proceeds; what reasons BMO in fact gave; and what federal law permitted BMO to say. Any one of these defeats the motion. Together, they leave nothing for summary judgment to do.

BMO's Local Rule 56.1(b)(2) Response to Plaintiffs' Statement of Material Facts and its Local Rule 56.1(b)(3) Statement of Additional Material Facts ("SAF"), filed contemporaneously herewith, set out the record on which the motion fails. The motion should be denied.

**LEGAL STANDARD**

Summary judgment is proper only if the movant shows no genuine dispute of material fact and an entitlement to judgment as a matter of law, Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), with all facts and inferences drawn for the nonmovant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). As the parties seeking judgment, Plaintiffs bear the burden of establishing each element of their claims — including this Court's jurisdiction — on undisputed facts. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

**ARGUMENT**

**I. Plaintiffs' Motion Seeks Judgment on Two Standalone ECOA Notice Claims That the Complaint Never Pleaded.**

Start with what the Complaint says. It pleads one ECOA cause of action: Count II, titled "Violation of ECOA – Discrimination Based on National Origin." That count invokes 15 U.S.C. § 1691(a) and nothing else. It alleges that BMO terminated their credit lines "because of, and on the basis of their ethnicity or national origin." (Compl. ¶¶ 86–97.) Now consider what Plaintiffs' motion asks for. Judgment on two different claims: that BMO failed to provide "specific reasons" under 15 U.S.C. § 1691(d)(2)–(3), and that it failed to provide the anti-discrimination notice required by 12 C.F.R. § 1002.9(b)(1). The Complaint contains allegations about BMO's letters, but allegations are not claims. Plaintiffs never attached an ECOA count to them.

The Seventh Circuit has said this many times: a plaintiff may not amend his complaint through summary judgment briefing. *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012); *Chessie Logistics Co. v. Krinos Holdings*, 867 F.3d 852, 859 (7th Cir. 2017) ("Summary

judgment is not a vehicle for asserting new claims."); *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 900 F.3d 529, 541 (7th Cir. 2018). Plaintiffs seek judgment on claims their Complaint does not contain. That alone requires denial.

**A. Plaintiffs' Own Motion Establishes That These Are New Claims, Not New Labels.**

Plaintiffs devote pages, and a dozen cases, to a single proposition: that § 1691(a) discrimination claims and § 1691(d) notice claims are "separate causes of action with their own elements." (Pls.' Mem. at 12–13.) BMO agrees. And the concession decides the question. A separate cause of action with its own elements is not an alternative characterization of some other claim. It is a different claim. *Whitaker v. Milwaukee County*, 772 F.3d 802 (7th Cir. 2014), draws precisely this line. A plaintiff may offer a new legal characterization of the same claim, on the same facts, for the same injury; what she may not do is introduce "new factual bases for claims or legal claims." Id. at 808. Plaintiffs are on the wrong side of that line four times over: they invoke different provisions (§ 1691(d) and § 1002.9), must prove different elements (what the letters said, not why BMO acted), challenge different conduct (the drafting of a notice, not the decision to terminate), and claim a different injury (procedural, not discriminatory). That is not a relabeled claim but a replaced one.

**B. The Complaint's Structure Shows the Notice Allegations Were Pleaded as Pretext Evidence.**

Begin with what is missing. The Complaint says nothing — not a word — suggesting that BMO's letters violated 12 C.F.R. § 1002.9(b)(1). Whatever else may be debatable, that claim is new. The remaining allegations are not a closer case. They appear for one purpose: to show discriminatory pretext. Having described BMO's letters (Compl. ¶¶ 30–33), the Complaint turns immediately to ethnicity — alleging disproportionate letters to customers "of Eastern European

ethnicity or national origin" (id. ¶ 34), a "pattern or practice of discrimination" (id. ¶ 39), and "no reasonable cause or suspicion" (id. ¶ 43) — before reaching the conclusion the allegations were built to support: that BMO's explanation "is an admission that it had no legitimate business reason for such termination." (Id. ¶ 48.)

That is textbook pretext pleading. The point of the notice allegations was to show that BMO's stated reason was false — not that the notice itself broke the law. Plaintiffs now ask to convert evidence of discriminatory motive into a claim that stands without any motive at all. That is not a new characterization of an old claim. It is a new claim, assembled from allegations that were doing other work — what *Whitaker* calls "a new substantive claim." 772 F.3d at 808.

**C. Constructive Amendment Is Unavailable Here.**

Nor can Plaintiffs recast their motion as a request to amend. They have never moved to amend, never tendered a proposed pleading, and never mentioned Rule 15, and a court need not treat summary-judgment briefing as a constructive motion to amend. See *Schmees v. HC1.com, Inc.*, 77 F.4th 483, 490–92 (7th Cir. 2023) (holding that constructive amendment through summary-judgment briefing is discretionary and "will rarely be appropriate"). So too here: Plaintiffs held the letters in 2023, quoted them in a 2024 state-court counterclaim for the same pretext purpose, and refiled here in 2025 — twice pleading a § 1691(a) discrimination claim and nothing more.

Plaintiffs cannot cure the omission in reply, where an argument raised for the first time is forfeited. *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009); see Fed. R. Civ. P. 7(b)(1). And had they moved to amend, Rule 15(a)(2) would not help, because "undue delay" and "futility" bar leave. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiffs pleaded these facts in August 2024 and again in June 2025, attached no ECOA count either time and first advanced them as a

claim in a May 2026 dispositive motion — all while holding the only documents the claim requires since 2023. *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008). The theories would be futile in any event, because Plaintiffs lack Article III standing to assert them. See Part II, infra.

**II. Plaintiffs Lack Article III Standing to Pursue Bare Procedural Notice Violations.**

Even if the notice theories had been pleaded, this Court would lack jurisdiction to enter judgment on them. The record affirmatively establishes that neither Plaintiff suffered a concrete injury traceable to the alleged deficiencies.

**A. A Statutory Notice Violation Without Concrete, Traceable Harm Confers No Standing.**

"An injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). Only plaintiffs "concretely harmed by a defendant's statutory violation" may sue over it in federal court. *Id.* A plaintiff alleging "a bare procedural violation, divorced from any concrete harm," has not established standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). The Seventh Circuit has applied that principle again and again to deficient statutory notices. See *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 334 (7th Cir. 2019); *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 780–81 (7th Cir. 2021) (no standing where the notice "didn't affect her at all"); *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021); *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022) (en banc). ECOA's notice provisions are no different: the informational interests Congress protected are injured only when the missing information deprived the applicant of something. An applicant who would have done nothing differently has suffered nothing.

**B. The Record Forecloses Any Concrete Injury from the Alleged Notice Deficiencies.**

**1. Plaintiffs' Own Testimony Confirms No Harm from the Notices.**

*PD Logistics.* Asked whether, had it been provided that information "in connection with this letter," PD Logistics "would . . . have done anything differently," its designee answered: "No, nothing." (Durovic Dep. 313:22–314:17.)

Walked through each category of claimed harm — the inability to draw on the line, the disruption to the business, the acceleration of repayment, the effects on credit — the designee traced every one to the termination itself, not to anything the letter said or omitted. (*Id.* 121–153; 232:14–236:19.) Those harms would have occurred in identical form had BMO enclosed a model Regulation B form. And the termination was authorized by contract: as the Complaint admits, "[t]he Letter of Agreement provides that BMO may make demand for payment at any time." (Compl. ¶ 16; SAF ¶ 4.) Injuries flowing from a contractually authorized termination are not injuries caused by the form of the notice announcing it. *TransUnion*, 594 U.S. at 423.

Timing severs the link independently. The designee testified repeatedly that he did not see the letter for roughly 45 days, because he was in Europe: "I see this letter after 45 days. . . . I was in the dark that 45 days." (Durovic Dep. 220:1–221:3; 232:14–233:6.) A notice the recipient has not read cannot have caused his injuries during the period of non-receipt — and PD Logistics' damages narrative centers on precisely that period.

*Bans.* Bans did not timely receive the letter. Its designee testified that the August 16, 2023 letter went to a different address, was returned, and reached him only later; asked when he first saw it, he said he was "not 100 percent sure," but thought "it was during the summer sometime." (Nenezic Dep. 119:24–120:5, 121:12–18.) A BMO internal communication from December 2023 records that the client "never received the letter and was unaware that he would need to pay the entire balance off at once." (*Id.* 120:22–121:1 (Ex. 22); SAF ¶ 21.) A document Bans had not received could not have caused injury through its contents during the period of nonreceipt.

Bans has also told BMO what actually caused its difficulties, and it was not a letter. In an August 9, 2024 letter written to BMO when BMO "was looking for the full amount to be paid off," Bans' president attributed the company's inability to pay to "the decline and low profitability in the trucking industry" over "[t]he last two years." (Id. 103:3–18; 104:8–12 (Ex. 18, Bans Inc 0250).) The designee confirmed and elaborated during a deposition: "a steady decline in prices and everything," with equipment values falling last. (Id. 104:15–105:7.) Measured from August 2024, "the last two years" begins before the August 2023 termination and continues past it — an industry-wide cause that brackets BMO's conduct entirely.

Asked what damages Bans suffered from discrimination as opposed to the closing of the line, the designee answered: "They canceled the loan. I think it's based on discrimination. That's discrimination enough." (Id. 174:6–11.) That is the termination, not the notice.

**2. Plaintiffs' Pleading and Testimony Trace Every Injury to the Termination.**

The Complaint alleges that BMO's decision to "terminate and cancel the lines of credit . . . has damaged Plaintiffs," then enumerates that damage: impaired ability "to borrow funds to continue their business"; a score "affected by the cancellation"; the burden and fees of "subsequent litigation brought by BMO"; and referral to collection. (Compl. ¶ 85.) Count II incorporates that allegation and seeks damages "incurred as a direct and proximate result of the cancellation." (Compl., Count II prayer for relief.) Every injury pleaded flows from the cancellation, not from what the letters said.

Both designees confirmed as much under oath. PD Logistics' designee agreed it "was unable to expand its business or purchase equipment because of the termination" (Durovic Dep. 121:16–20), and that "all kind of stuff happened when the . . . credit line was closed" (id. 122:1–2). Bans' designee, walked through each harm he claimed — the inability to grow JB Freight,

lost access to equipment funds, the reputational effect of collections, the cost of an attorney (Nenezic Dep. 163:8–164:10) — confirmed that if BMO "had not terminated [the] line of credit," he "would not" have suffered any of them (id. 164:11–14), and that "it is the termination and canceling of the lines of credit that caused [him] damage" (id. 165:5–7; 166:9–10).

Neither designee attributed any injury to the content of BMO's letters. A plaintiff's own allegations bind it, *Soo Line R.R. v. St. Louis Sw. Ry.*, 125 F.3d 481, 483 (7th Cir. 1997), and here the pleading and the testimony say the same thing.

**3. All Plaintiffs Claim Is That They Would Have Asked Questions. Inquiry Is Not Injury.**

By the time counsel turned to redirect, each designee had already testified that his damages flowed from the termination, not the notices. What redirect produced, stripped to essentials, is that each designee would have made an inquiry — a phone call or a letter to an agency, an attempt to persuade BMO to reconsider. (Durovic Dep. 320:8–321:13; Nenezic Dep. 214:13–215:1; id. 224:14–225:7.) And an inquiry is not an injury, for two reasons.

*First, the anti-discrimination notice would not have supplied what the designees say they were missing.* The § 1002.9(b)(1) notice states only that ECOA prohibits discrimination and identifies the enforcing agency; it contains no reasons. But reasons are precisely what each designee said he was after — Bans' designee would have called "to find out why they closed my account" and written to ask the Bureau "what is the reason for the discrimination" (Nenezic Dep. 214:14–15; 225:1–3), and PD Logistics' designee identified no different objective. An omission cannot cause an injury the required disclosure would not have remedied.

Second, and more fundamentally, asking questions is not a concrete harm. A plaintiff who reacts to a deficient communication — worrying, being confused, seeking advice — has not thereby suffered concrete harm. In *Pierre*, the plaintiff read the communication, was confused,

and consulted a lawyer; the en banc court held she lacked standing. 29 F.4th at 937, 939. Confusion and annoyance do not qualify, because otherwise "everyone would have standing to litigate about everything." *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068–69 (7th Cir. 2020). Article III requires "concrete harm that [the plaintiff] wouldn't have incurred had the [defendant] complied," *Wadsworth*, 12 F.4th at 668–69 — detrimental action. "If [the plaintiff's] confusion had caused him to act to his detriment, then he might have had standing." *Patterson v. Howe*, 96 F.4th 992, 999 (7th Cir. 2024).

That point disposes of more than the redirect. The omissions did not deter either Plaintiff from asking BMO the very question the letters supposedly should have invited: Bans' designee raised the closure with bank personnel in person at BMO branches (Nenezic Dep. 126:14–24; 212:19–23), and PD Logistics' designee spent his forty-five days trying to "contact everyone" (Durovic Dep. 232:17–233:6). Both asked; neither was deterred. And what each designee described beyond asking was not a detrimental act but a wish — a chance to "save the . . . relationship" or to "fight against the closure or to remedy it" (Durovic Dep. 237:2–11; Nenezic Dep. 167:24–168:11) — and a lost opportunity to persuade is not an injury; it is the absence of one. Bans' designee said as much himself, attributing his inability to act not to the letter's contents but to its late delivery: "by the time I received the letter, there was really nothing I could have possibly done." (Nenezic Dep. 168:17–23.)

The contrast with a qualifying injury confirms the point. A notice violation matters when it "leads a plaintiff to pay extra money, affects a plaintiff's credit, or otherwise alters a plaintiff's response to a debt." *Markakos*, 997 F.3d at 780 (citing *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020)). Neither Plaintiff offers an analogue: each one's repayment obligation arose from its Letter of Agreement, both pursued BMO regardless, and neither

identifies a credit consequence traceable to the letters. Bans' designee admitted he never looked, never pulled a report, and never checked whether any score moved (Nenezic Dep. 139:16–19; 158:20–159:11), and Bans never applied for credit elsewhere afterward (id. 139:20–24). No credit report, score, or declined application has been produced as to either Plaintiff — as in *Markakos*, Plaintiffs' own submissions show the opposite of injury.

**C. Neither Statutory Nor Punitive Damages Supplies the Missing Injury.**

Neither statutory nor punitive damages, nor equitable relief, supplies the missing injury. ECOA does not provide fixed statutory damages for a notice violation. Section 1691e instead authorizes actual damages, capped punitive damages, equitable relief, and fees. 15 U.S.C. § 1691e(a)–(d). But the point is more basic: a statutory remedy is not itself an Article III injury. Congress may authorize remedies; it cannot convert a bare procedural violation into an Article III case or controversy. *Spokeo*, 578 U.S. at 341; *TransUnion*, 594 U.S. at 427. And equitable relief is unavailable regardless: Plaintiffs' banking relationships with BMO have ended, and they face no real and immediate threat of a future adverse-action notice. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017).

If Plaintiffs had been harmed by what BMO's letters omitted, the record would show it somewhere. It does not. The Complaint traces every claimed damage to the cancellation; the documents identify no step either Plaintiff took, or forwent, because of what the letters said; and the designees described branch visits, inquiries, and preferences, but no act to their detriment. Most tellingly, Plaintiffs' own Statement of Undisputed Material Facts is silent on damages — it identifies no injury at all, let alone one traceable to the notice rather than the termination. Across two complaints, full discovery, and now a motion for summary judgment on which they bear the burden, Plaintiffs have never identified damages traceable to the notice; that sustained silence is

the surest indication that none exist. A harm that appears in no pleading, no document, no deposition, and no statement of material facts is not one on which this Court can enter judgment.

Because standing is jurisdictional, the Court must resolve it before reaching the merits, and Plaintiffs bear the burden of establishing it with evidence at this stage. *Lujan*, 504 U.S. at 561. On this record, the motion cannot be granted. At a minimum, injury and causation are genuinely disputed, and Plaintiffs have not carried the burden that is theirs alone.

**III. Genuine Disputes of Material Fact Independently Preclude Summary Judgment.**

**A. A Reasonable Jury Could Find the Terminations Were Not "Adverse Action" Because They Were Taken in Connection with Default.**

Regulation B excludes from "adverse action" "[a]ny action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account." 12 C.F.R. § 1002.2(c)(2)(ii). If the terminations fall within that exclusion, no notification was required at all, and both theories fail at the threshold.

The Letter of Agreement makes the relevant defaults concrete. Borrower "agrees not to take an Advance from a Loan to pay BMO for any amounts due" (Compl. Ex. 1, PageID #:40), and must "[u]se Loan proceeds consistent with the approved purpose" (*id.*, PageID #:41). Schedule E makes any breach of a covenant an Event of Default (¶ 2), as it does a material adverse change "as determined by BMO" or BMO's belief that "the prospect of payment or performance of the Loans is impaired" (¶ 7), and BMO's good-faith belief that it is insecure (¶ 13). (*Id.*, PageID #:43.)

Plaintiffs' own designees supplied the breaches. PD Logistics' designee acknowledged the line was "not supposed to be used for any personal expenses" (Durovic Dep. 93:14–21), then described drawing $4,283.43 and $12,216.55 to pay credit-card balances, routing draws through the business account to pay American Express and Citibank, and paying himself and personal

utilities because "[t]his company was me" (id. 254:20–255:2; 258:14–259:18; 272:7–273:12). Bans' designee testified that Bans drew roughly $95,250 to buy a tractor and trailer used exclusively by JB Freight Group, Inc. — a company he co-owns with a third party — though Bans holds neither a DOT number nor motor-carrier authority and cannot lawfully haul freight itself (Nenezic Dep. 199:24–201:7). Proceeds applied to equip an affiliate are not used "consistent with the approved purpose," and unlike a missed payment, that breach persisted through the August 2023 termination.

The connection to the terminations was not incidental. BMO's Rule 30(b)(6) designee testified that the lines were reviewed by BMO's risk unit, which found the lines "were considered to potentially go into a default status, and the activity exceeded the bank's risk tolerance" — based on immediate disbursement of proceeds, repayment capacity that was "minimal to none," and payments showing no business purpose, as to both Plaintiffs. (Bernitt Dep. 22:1–24:2; *see also* BMO0001311; BMO0001469; BMO0001472; BMO0001287.)

Plaintiffs will point to BMO's discovery response as an "admission" they were not in default. It is nothing of the sort. Requests Nos. 29 and 30 asked BMO to admit each Plaintiff "was not in default, as defined by the parties' Letter of Agreement" — a contested legal characterization requiring construction of Schedule E. BMO responded that it "was not aware if" each Plaintiff was in default: an admission about BMO's own knowledge, not about the underlying facts. And BMO made even that narrow admission "solely for purposes of this litigation," expressly reincorporating its objection that whether an Event of Default occurred "may depend on facts and circumstances solely within" Plaintiffs' or third parties' knowledge — including "borrower breaches of representations, warranties, covenants, cross-defaults, or material adverse changes." (Pls.' Ex. 4, Supp. Resps. to RFA Nos. 29–30.) A party's admitted

ignorance of default is not evidence that default did not occur. See *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987). Plaintiffs' motion compounds the overreach: it rests this premise on "SMF ¶¶ 23–24" (Pls.' Mem. at 3), but Plaintiffs' Rule 56.1 statement contains no such paragraphs — it ends at ¶ 22. Discovery has since supplied the facts BMO lacked, and they point the other way: PD Logistics' designee testified to drawing on the line for personal expenses and cycling proceeds back to repay it (Durovic Dep. 254:20–255:2; 258:14–259:18; 272:7–273:12) — conduct at odds with the Letter of Agreement's use-of-proceeds covenant and its bar on using Advances to repay BMO, and an Event of Default under Schedule E, ¶ 2. Whether default occurred is a jury question — one on which Plaintiffs bear the burden.

None of this asks the Court to find that Events of Default occurred. It asks only what Plaintiffs' posture requires: as movants, they must establish on undisputed evidence that no Event of Default occurred and that the terminations were not taken in connection with default. Their sole support is BMO's disclaimer of contemporaneous knowledge — the same disclaimer on which their Rule 56.1 statement rests. (SMF ¶¶ 21–22.) The affirmative evidence runs the other way. The question is genuinely disputed.

**B. What Reasons BMO Provided — and Whether They Sufficed — Is Genuinely Disputed.**

Plaintiffs assume the August 2023 letters contain everything BMO communicated (SMF ¶¶ 15–16), but the record they cite refutes that premise twice over. BMO's Second Supplemental Response to Request No. 20 *denies* that the August 16 letter "set[s] forth all of the reasons BMO provided Bans Inc." and identifies four further documents (Bates Nos. BMO0001311, 1469, 1472, and 1287). (Pls.' Ex. 4.) And Plaintiffs misquote what the letters do say: their motion stops at a "regular review of customer relationships and account activity" (Pls.' Mem. at 2), omitting that the review identified information "exceed[ing] the risk tolerance of the bank" — as their

own Complaint alleges (Compl. ¶ 31). Resting on a superseded response and a truncated quotation, SMF ¶ 16 cannot support judgment.

Plaintiffs' second theory misreads the regulation. Section 1002.9(b)(1) directs a creditor to provide a notice "substantially similar" to the model, not a verbatim block of text, and § 1002.9(b)(2) is satisfied by a statement "specific" to the "principal reason(s)" — deeming insufficient only reliance on "internal standards or policies" or a failing credit score, neither of which describes "exceeds the risk tolerance of the bank." The parties' own agreement supplied that term with content: Schedule E makes BMO's impairment determination and good-faith belief of insecurity Events of Default. (Compl. Ex. 1, PageID #:43.) A borrower who contracted for a facility terminable on the bank's own risk judgment cannot claim to be "clueless" when told that judgment was made.

Plaintiffs' own authorities confirm the point, because every one arose from the *denial of an application*, not the termination of an existing facility. *Fischl v. Gen. Motors Acceptance Corp.*, 708 F.2d 143, 148 (5th Cir. 1983); *Stoyanovich v. Fine Art Capital LLC*, No. 06 Civ. 13158, 2007 WL 2363656, at *6 (S.D.N.Y. Aug. 17, 2007); *Chen v. Chase Bank USA, N.A.*, 393 F. Supp. 3d 850, 854 (N.D. Cal. 2019); and *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 977 (7th Cir. 2004) — their only Seventh Circuit case — each faulting a notice for leaving a rejected applicant unable to "improve his credit application" or "rectify the mistake" and resubmit (both quoted at Pls.' Mem. at 10). That rationale assumes a pending application; it has no purchase where a bank ends an existing relationship after a compliance review, with nothing to correct and nothing to resubmit. Plaintiffs cite no decision holding that a risk-tolerance determination on the termination of a demand facility fails § 1002.9(b)(2), and on a motion where they bear the burden, that absence is dispositive.

**C. Which Letter Is the Operative Notice — and What It Said — Is Genuinely Disputed.**

Plaintiffs' Complaint pleaded that the August 14, 2023 letter (Complaint Exhibit 2) was BMO's adverse-action notice whose stated reason was "the only attempt at any explanation by BMO to provide a statement of reasons." (Compl. ¶¶ 31–32.) BMO's Rule 30(b)(6) designee identified that same August 14 letter, and the parallel August 14 letters to Bans, as the operative adverse-action notices. (Stentz Dep. 115:9–120:2; BMO0001469, BMO0001287.) The motion instead cites an "August 17" letter and an "August 16" letter (Pls.' Mem. at 2, 8), quoting selectively — stopping at "expectations or legal requirements" and eliding "and therefore exceeds the risk tolerance of the bank," that the Complaint admits the letters contained (Compl. ¶ 31). Plaintiffs' own papers — Complaint and motion — put the notices' identity and content in genuine dispute. That is for a jury, not summary judgment.

Finally, federal law independently constrains what a bank may say about a compliance review: it forbids disclosing that a customer's activity is or was the subject of a suspicious activity report. 31 U.S.C. § 5318(g)(2)(A)(i); 12 C.F.R. § 21.11(k). At minimum, the interaction between ECOA's notice provisions and that prohibition presents a question Plaintiffs' motion never addresses.

**CONCLUSION**

Plaintiffs seek judgment on claims they never pleaded, that they lack standing to assert, on a record disputed at every material point. The injury their notice theories require appears nowhere — not in the Complaint, which traces every claimed damage to the cancellation; not in the documents; not in their designees' testimony; and not in their Rule 56.1 statement, which contains no paragraph directed to injury or causation at all. BMO respectfully requests that the Court deny Plaintiffs' Motion for Partial Summary Judgment in its entirety.

Dated: August 25, 2026

Respectfully Submitted,

Jeffrey Jamison

/s/ Jeffrey Jamison

One of BMO's Attorneys
BMO Financial Group
320 S. Canal Street – Floor 7
Chicago, Illinois 60606
Telephone: (312) 461-4694
Jeffrey.Jamison@bmo.com

CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was filed through the Court's electronic filing system and served on Plaintiffs' counsel via email on August 25, 2026. Parties of record may obtain a copy through the Court's CM/ECF system.

/s/ Jeffrey E. Jamison