**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **P.D. LOGISTICS, LLC, et. al.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 25-cv-06559** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BMO BANK N.A.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# BMO BANK N.A.'S MOTION TO COMPEL AND FOR SANCTIONS

Defendant/Counter-Plaintiff BMO Bank N.A. ("BMO") moves under Rule 37 and Local Rule 37.2 to compel Plaintiff PD Logistics, LLC ("PD") to produce all ESI responsive to BMO's Requests and to sanction PD and its counsel:

## INTRODUCTION

For nearly a year, BMO has sought basic electronically stored information ("ESI") that exists in any functioning business. PD repeatedly claimed it had none. Through discovery responses, attorney correspondence, and an affidavit, PD and its counsel represented that PD had searched thoroughly and complied with its obligations.

Those representations were false. PD's 30(b)(6) testimony established that it conducts businesses through a Gmail account, receives daily emails relating to trucking operations, invoices, payments, banking relationships, insurance, tax matters, and regulatory compliance. Yet, before its deposition, PD produced virtually none of those emails. More troubling still, PD admitted that its Gmail account was

configured to automatically delete and that this auto-delete function remained active even after this litigation was filed. Then, only after its deposition and after BMO threatened to file a motion to compel, PD produced approximately 220 new emails.

PD's conduct is particularly egregious because, while insisting that discovery proceed on schedule and opposing requests to extend deadlines, it was simultaneously failing to search for, preserve, and produce its own responsive ESI. Having resisted additional time for discovery, PD cannot now justify its noncompliance by pointing to the passage of time or the close of fact discovery on its claims.

## BACKGROUND

### 1. Procedural History

#### a. Pleadings

Plaintiffs PD and Bans filed this putative class action on June 12, 2025, alleging that BMO discriminated against them and a proposed class of trucking customers by terminating certain banking relationships because of concerns about their account activity. Doc. 1. On March 4, 2026, the Court dismissed the contract and Illinois Consumer Fraud and Deceptive Business Practices Act claims but allowed the Equal Credit Opportunity Act ("ECOA") and 42 U.S.C. § 1981 claims to proceed. Doc. 35. BMO answered and asserted fraud and RICO counterclaims on March 19, 2026. Doc. 36. Plaintiffs' April 8, 2026, motion to dismiss those counterclaims is fully briefed and pending. Doc. 42. Plaintiffs moved for partial summary judgment under ECOA on May 8, 2026, and for class certification on May

18, 2026. Docs. 60, 63. BMO responded on August 25, 2026, and Plaintiffs' replies are due September 15, 2026. Doc. 65.

**b. Discovery Deadlines**

The Court initially set June 26, 2026, as the fact-discovery deadline. Doc. 16. After Plaintiffs declined a joint extension, BMO moved to extend discovery. Doc. 47. The Court extended discovery on BMO's fraud and RICO claims through September 30, 2026, while leaving June 26, 2026, as the deadline for discovery on Plaintiffs' claims. Doc. 49.

**2. Discovery History**

On August 22, 2025, PD served its Rule 26(a)(1) Disclosures. See Rule 26(a)(1) Disclosures attached hereto as **Exhibit 1**. Despite Rule 26(a)(1)(A)(ii)'s requirement that parties identify categories of ESI, PD identified no ESI in its possession, only referencing "electronically stored information from BMO."[2] Ex. 1. PD failed to disclose any email accounts, text messages, electronic business records, or other ESI maintained in the ordinary course of PD's operations. Nor did PD disclose the Gmail account through which it conducted business and that its representative later testified contained extensive important business-related communications. Ex. 1.

On August 29, 2025, BMO served its First Requests for Production of Documents, attached hereto as **Exhibit 2**. BMO defined "Communication" broadly to include "electronic mail, text message, instant message, chat message, internet posting, social posting or other transfer of information," and defined "Document" to encompass the broadest possible meaning permitted under the Federal Rules. Ex. 2

at 2. BMO then sought Documents and Communications regarding: (a) the transactions for which BMO loan proceeds were used; (b) PD's business operations and transactions; (e) the structure, formation, and governance of PD; (f) regulatory compliance; (g) debts and liabilities; (h) capitalization and funding; (i) ownership and use of business vehicles; (j) banking relationships, credit facilities, and account closures; (k) investigations involving Eastern European individuals or entities suspected of fraudulent activity; and (l) materials reviewed in preparing discovery responses. See Nos. 3–4, 6–13, and 15 of Ex. 2.

On September 29, 2025, PD served its responses, which are attached hereto as **Exhibit 3.** PD responded to numerous requests with boilerplate objections. Ex. 3. Further, despite requests that plainly sought ESI, PD Logistics produced only a handful of emails and text messages exchanged with BMO employees—documents that were already in BMO's possession.

The complete absence of a meaningful ESI production from PD, which claims to operate an active trucking business, concerned BMO. Accordingly, on October 16, 2025, BMO initiated the meet-and-confer process. See October 16, 2025, letter attached hereto as **Exhibit 4**. The parties conferred via video conference on October 24, 2025. Despite those discussions, PD did not produce any ESI when it supplemented its production on November 14, 2026. See Amended Responses attached hereto as **Exhibit 5**.

On January 12, 2026, counsel again conferred by video conference. On February 26, 2026, BMO sent a follow-up Rule 37 letter, which is attached hereto as

**Exhibit 6**. BMO reminded PD that its discovery requests included ESI and noted that PD had produced virtually none despite claiming to operate an ongoing business that was pursing a purported class action in federal court. Id. BMO again demanded production of PD's ESI. Id.

In response, PD's counsel represented that "Plaintiffs have produced all emails in their possession that are relevant to this proceeding" and that "Plaintiffs can confirm that they do not possess any additional electronically stored documents." See March 16, 2026, correspondence attached hereto as **Exhibit 7.**

BMO sent another letter dated April 15, 2026, which is attached hereto as **Exhibit 8**. BMO advised that it had serious concerns that neither PD nor its counsel had conducted the search required by the Federal Rules because, despite holding itself out as legitimate and ongoing business, PD had produced virtually no ESI.

On April 29, 2026, PD served its Second Amended Responses, and, again, produced no emails, text messages or other forms of ESI. Those responses are attached as **Exhibit 9**. Additionally, PD's manager executed an affidavit attesting that he had "conducted a thorough and good faith search for all records responsive to [BMO's] discovery requests" and that PD's "production is complete." Ex. 9.

Given these representations by PD and its counsel, BMO worked with PD's counsel to schedule its Rule 30(b)(6) deposition. The parties agreed that the deposition would proceed on June 10, 2026.

Approximately one week prior, and despite its previous sworn statements to the contrary, PD produced approximately 200 pages of new documents and served its

Third Amended Responses, which are attached hereto as **Exhibit 10**. PD produced a few new emails with Alpha Trucking, GOT Inc., and SCG Logistics, notwithstanding its prior representations that its earlier production was complete.

PD's deposition proceed on June 10, 2026. At its deposition, PD testified that it used a Gmail account for its work and that "every day…as a truck driver, [he would] get, like, five, six, seven emails" related to his work. See 38:18-39:18 from transcript of Rule 30(b)(6) of PD attached hereto as **Exhibit 11**. PD attested further that the Gmail account was set up so that materials would auto-delete after one year, and that if it didn't mark something as important it would be deleted. Ex. 11 at 38:18-40:6. Concerningly, PD testified that PD did not turn off the Gmail account's auto delete feature even after it filed this purported class-action lawsuit:

> Q. After this lawsuit was filed by PD Logistics in June of 2025, did you turn off the auto-deletion function on your email?
> A. No, ma'am.

Ex. 11 at 43:21-24.

PD testified that it considered emails from its accountant, the Federal Motor Carriers Safety Administration ("FMSCA") Clearinghouse, the Internal Revenue Service, its insurance agency and carriers, and its banking institutions as important information. Ex. 11 at 38:18-45:24. PD testified further that it received multiple emails related to trucking work daily, including statements of work, loads hauled, invoices, payments/paychecks, and other business dealings. Ex. 11 at 38:18-45:24. PD identified these emails as important business records. Id.

BMO also questioned PD regarding how responsive documents were collected. PD testified that no one other than its owner participated in collecting documents. Ex. 11 at 46:1–4. PD further testified that the 200-page supplemental production was made because it believed BMO had served new requests seeking new documents even though that was not the case. Ex. 11 at 46:5–47:13.

On June 30, 2026, BMO's counsel emailed PD's counsel and asked when PD would produce the emails it identified at its deposition. See email exchange attached hereto as **<u>Exhibit 12</u>**. Hearing nothing, on July 8, 2026, BMO's counsel again emailed and asked when the "emails that PD Logistics testified it preserved and would produce related to among other things, the trucking jobs it performed, its lease agreements, tax preparation, banking relationships, compliance obligations, and insurance coverage" would be tendered. Ex. 12. In response, PD's counsel, told BMO that it would need "to be a lot more specific about what information you are looking for before we can provide a response." Id.

On July 9, 2026, BMO responded as follows:

> Your request that we be "a lot more specific" is difficult to understand given your client's deposition testimony, the Bank's document requests, and the multiple Rule 37.2 communications we have sent concerning electronically stored information. You defended the deposition and personally heard the testimony regarding the scope of emails your client preserved. These communications have been discussed repeatedly in our Rule 37.2 correspondence and are plainly encompassed by the Bank's document requests.

Ex. 12.

PD's counsel responded by minimizing the deficiencies in PD's production. PD's counsel asserted that truck drivers "don't have filing cabinets in their trucks" and are

not as "facile with the categorizing, storage and review of documents." Ex. 12. More troublingly, despite PD's counsel's express acknowledgment that his client, PD, lacks sophistication with discovery, counsel described an ad-hoc collection process under which responsive documents are produced only when PD happens to identify them. Ex. 12. "When our clients discover that they have documents . . . they produce them." Ex. 12. Counsel further represented that "we have forwarded Mr. Durovic the transcript and have directed him to determine if there are additional documents in his possession or control." Ex. 12.

In response, BMO's counsel reiterated that BMO was not asking PD to "search filing cabinets," but to produce the ESI that PD had testified it maintained. Ex. 12. BMO further reminded that: "Under Rule 26(g), counsel's obligation extends beyond merely relaying discovery requests to a client and accepting whatever documents the client elects to provide." Ex. 12. BMO again requested a production of ESI.

Receiving no response, BMO followed up on July 21, 2026, and requested a meet and confer. Ex. 12. The parties conferred on July 30, 2026. During that video conference, PD's counsel advised that PD would review its emails. See July 30, 2026, email attached hereto as **Exhibit 13**. PD's counsel also confirmed that they did not and had not had access to PD's email and therefore, could not conduct the review themselves. Id.

On August 3, 2026, PD produced approximately 220 emails. Disturbingly, at least two of the emails were within the possession of PD's counsel before the deposition yet were not produced. Specifically, the emails attached hereto as **Exhibit**

**14** reflect that on May 12, 2026, these communications were transmitted directly to Attorney Bakov. The significance of the withheld emails is underscored by their content. One email portrays PD's owner, Pavle Durovic, in a negative light, stating: "Guys, Pavle is starting out with the truck today, so I'm sending you his first load. Coordinate among yourselves and decide who will handle him. 😊". Ex. 14.

PD's ESI production remains incomplete. PD testified that it received at least 5 to 7 daily emails regarding the work it performed. For the years 2022-2023, that would represent the receipt of 3650 to 5110 emails. However, only a fraction of those emails have been produced. Further, PD testified that it maintained email communications with its insurance provider and the FMCSA Clearinghouse, yet, it has produced no such communications. Likewise, although PD produced communications with its tax preparer from 2024, it failed to produce any email communications for 2022 or 2023. Moreover, during the deposition of Veles Transport, a trucking company with which PD conducted business, BMO learned that drivers regularly communicate with dispatch and safety personnel through text and other messaging applications. However, PD has not produced any of these communications. These omissions raise substantial concerns regarding the adequacy of PD's ESI collection efforts, still. This motion follows along with the required Affidavit of Meredith Pike attached hereto as **Exhibit 15**.

## ARGUMENT

### A. Standard of Review

#### 1. Rule 37

Rule 37 permits a motion to compel when a party fails to respond or provides an insufficient response. *Thorsen v. Community Unit School District*, No. 20 C 50132, 2023 WL 11983957, *2 (N.D. Ill. 2003) (J. Schneider); *DR Distributors, LLC v. 21st Century Smoking Inc.*, 513 F.Supp.3d 839, 954 (N.D.Ill. 2001); Fed. R. Civ. P 37(a)(4). District courts have broad discretion and liberally construe discovery rules. *Thorsen,* 2023 WL 11983957 at *2. If the motion is granted, the non-complying party, its attorney, or both must pay reasonable expenses and fees unless the position was substantially justified or would be unjust. *DR Distributors, LLC,* 513 F.Supp.3d at 954-955. The rule mandates fees absent those exceptions. *Id.;* See also *Guster-Hines v. McDonald's USA, LLC*, No. 20 CV 117, 2025 WL 777507 at *5 (N.D. Ill. 2025) (J. McNally).

**2. Rule 26**

Rule 26(a)(1)(A)(ii) requires disclosure, without awaiting a request, of documents and ESI in a party's possession, custody, or control that it may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(ii). Under Rule 26(g), counsel's signature certifies, after reasonable inquiry, that a disclosure is complete and correct. An unjustified violation requires an appropriate sanction, including expenses and fees. Fed. R. Civ. P. 26(g). Sanctions are mandatory, though their form is discretionary. *DR Distributors, LLC,* 513 F.Supp.3d at 953.

**B. PD should be ordered to produce its ESI and pay BMO's costs.**

PD's conduct reflects a sustained failure to comply with its obligations and leaves little doubt that an order compelling ESI production is warranted. Despite

claiming to operate an ongoing trucking business and subsequently testifying that it conducts its operations through a Gmail account, PD failed to identify any of its own ESI in its Rule 26(a)(1) disclosures. BMO then served document requests that plainly sought ESI regarding PD's business operations, yet, PD repeatedly represented—through responses signed by counsel and a sworn-affidavit from its manager—that it had conducted a thorough search and completed its production with the only ESI available being emails with BMO.

Such representations were demonstrably false. Days before its Rule 30(b)(6) deposition, PD produced approximately 200 additional pages of documents that should have been located months earlier and included a handful of emails with trucking companies with which it conducted business. More significantly, PD's Rule 30(b)(6) testimony exposed its prior representations as inaccurate. PD testified that PD conducted its business through a Gmail account, received 5 to 7 daily business emails concerning trucking jobs, invoices, payments, banking relationships, tax matters, insurance, regulatory compliance, and other core business functions. The testimony further revealed that PD continued allowing its Gmail account to auto-delete emails after it commenced this litigation and that responsive documents were collected solely by its owner without any meaningful oversight by counsel.

To make matters worse, despite multiple Rule 37 letters, repeated meet-and-confer efforts, PD did not produce the bulk of its emails until after its deposition, and that production remains incomplete. This is not a normal discovery dispute; it is a wholesale failure to search for and produce responsive information in a federal

lawsuit seeking class certification. Because PD's responses remain incomplete, despite multiple efforts by BMO to secure compliance, BMO submits that the Court should order PD to immediately produce all responsive ESI and award BMO its reasonable fees and expenses incurred in securing PD's compliance because BMO was forced to expend significant time and resources over many months pursuing discovery that PD was obligated to produce without court intervention.

### C. **The Court Should Order Retention of an ESI Vendor.**

PD's counsel failed to abide by its duties imposed by Rule 26(g) by repeatedly certifying that PD's discovery responses were complete when the record demonstrates otherwise. Counsel signed initial and amended discovery responses, represented that PD had produced all responsive emails, and tendered a sworn-affidavit attesting that PD's production was complete. Yet, both PD's June and August productions, and its testimony, later revealed the existence of substantial categories of emails that were not produced. Even now, PD's ESI production remains incomplete. PD has not produced the full scope of the daily business communications that its corporate representative testified exist, nor has it produced emails with the FMCSA Clearinghouse, its insurance provider, its tax preparer, or text messages relating to its trucking operations.

In *DR Distributors, LLC*, 513 F.Supp.3d 839, this Court examined counsel's obligations with respect to ESI and imposed sanctions for counsel's failure to satisfy them, noting: "Counsel must be competent in their knowledge and ability to identify, preserve, collect, review, and produce ESI. Competence pervades every aspect of the

ESI discovery process. This is not a new requirement." *Id.* at 942. This Court held that "attorneys have an obligation to investigate their client's information management system thoroughly to locate potentially relevant and discoverable material…such an investigation goes well beyond simply asking the client for the relevant files and trusting that the client itself has a complete understanding of its own information technology structure." *Id.*

Equally fundamental, "once a party reasonably anticipates litigation, it is duty-bound to take good faith steps to preserve documents." *Id.* at 929. "[A]ttorneys must inform their clients of these preservation duties." *Id.* "It follows that in cases involving ESI, to satisfy their preservation duties, parties must investigate and disable autodelete functions on email accounts at the onset of litigation if those accounts reasonably contain relevant information." *Id.* at 931. Indeed, "well before…2012, attorneys were on notice to instruct their clients to disable autodelete functions." *Id.* at 932. "These are not novel concepts." *Id.*

PD's counsel permitted discovery to proceed based on a client-driven, self-collection process. And counsel failed to ensure that PD suspended the Gmail account's auto-deletion function after this class action litigation was filed, despite the obvious likelihood that the account contained relevant evidence. These facts reflect an abdication of counsel's duty to supervise the collection of responsive ESI. Under these circumstances, neither BMO nor the Court can have confidence that PD has produced all responsive ESI. Indeed, despite repeated certifications that production

was complete, substantial volumes of responsive emails subsequently surfaced and significant categories of responsive communications remain absent, still.

Requiring PD to conduct yet another self-directed search would simply repeat the process that created the present deficiencies. Courts have recognized that where a party has demonstrated an inability or unwillingness to competently preserve and collect ESI, a collection by a qualified third-party vendor is an appropriate and proportional remedy. See *Seven Seas Cruises S. De. R.L. v. V. Ships Leisure SAM*, No. 09-23411-CV, 2011 WL 772855 at *4 (S.D. Fla. Feb. 19, 2011) (ordering defendants to retain an e-discovery vendor after finding that “Defendants' failure in this area is the result of a lack of familiarity and/or training in searching for and producing ESI”); See also *EEOC v. Mia Aesthetics Clinic, ATL, LLC*, No. 24-cv-3407-MLB-AWH, 2025 WL 2417759 at *6 (N.D. Ga. August 18, 2025) (ordering retention of an e-discovery vendor after finding that defendants had demonstrated technical incompetence). Accordingly, the Court should order PD to retain a qualified e-discovery vendor to collect and produce responsive information from PD's Gmail account, text messages, and any other communication platforms used to conduct its business.

**CONCLUSION**

For these reasons, the Court should grant this Motion and:

(1) Order PD to immediately produce all responsive ESI;

(2) Order PD, at its own expense, to retain a qualified eDiscovery vendor to collect and produce responsive ESI;

(3) Award BMO its fees and costs incurred in securing PD’s compliance with its ESI-discovery obligations and permit BMO to submit a fee petition within fourteen days after entry of an award granting that relief;

(4) Enter any fee and cost award jointly and severally against PD and its counsel;

(5) Award such other relief as is just and proper.

Respectfully Submitted,

BMO Bank N.A.

/s/ Meredith Pike
One of Its Attorneys

Jeffrey Jamison
Meredith Pike
BMO Bank N.A.
320 South Canal Street, Floor 7
Chicago, Illinois 60606
(312) 461-5386
Jeffrey.Jamison@bmo.com
Meredith.Pike@bmo.com

## CERTIFICATE OF SERVICE

I, Meredith Pike, an attorney, state that I caused Defendant/ Counter-Plaintiff BMO Bank N.A's Motion to Compel and For Sanctions to be served upon the persons listed below via ECF and email on August 28, 2026.

/s/ Meredith Pike

**Counsel for Plaintiff**

Jeffrey Grant Brown
Jeffrey Grant Brown P.C.
65 West Jackson Blvd., Suite 107
Chicago, Illinois 60604
jeff@JGBrownlaw.com

Angel Bakov
Bakov Law Ltd.
One East Wacker Drive, Suite 2510
Chicago, Illinois 60601
abakov@bakovlaw.com