**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PD LOGISTICS, LLC, an Illinois limited liability company; PAVLE DUROVIC; BANS, INC., an Illinois corporation; and, ARSENIJE NENEZIC, Individually and on Behalf of Others Similarly Situated,** | ) | **Case No. 25-cv-06559** |
| **Plaintiffs,** | ) | **Judge Sharon Johnson Coleman** |
| **v.** | ) | **Magistrate Judge Laura K. McNally** |
| **BMO BANK, N.A.,** | ) | |
| **Defendant.** | ) | |

# PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION


Jeffrey G. Brown
**JEFFREY GRANT BROWN, P.C.**
65 West Jackson Boulevard, #107
Chicago, Illinois 60604
Telephone: (312)789-9700
*jeff@JGBrownlaw.com*

Angel P. Bakov
**BAKOV LAW, LTD.**
One East Wacker Dr., Ste. 2510
Chicago, Illinois 60601
Telephone: (312) 880-1008
abakov@bakovlaw.com

**Attorneys for Plaintiffs**

The Equal Credit Opportunity Act - a federal law with which every lender must be familiar and adhere - requires a particular, statutory notice when a lender revokes credit, as here. BMO contends Plaintiffs "pleaded one case and now ask the Court to certify another." Deft's Resp., p. 1. But this case has always been, from the outset, about unlawful discrimination on the basis of national origin *under ECOA*. The Complaint alleges such discrimination, the motion seeks to certify[2] a class of those affected, and the evidence gathered now makes clear that BMO violated ECOA by not providing the notice required by law to a numerous class of persons.

## I. <u>Rule 23 And Case Law Recognize That Class Definitions Can Change</u>

Litigants and judges regularly modify class definitions. *Schorsch v. Hewlett-Packard Co.,* 417 F.3d 748, 750 (7th Cir. 2005). Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation, because "… such an order, particularly during the period before any notice is sent to members of the class, 'is inherently tentative.'" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Rule 23 does not freeze the putative class definition at the pleading stage. Once a complaint places the defendant on notice that class wide relief is sought, the proposed class may be refined in light of discovery and the Rule 23 record, and the district court has discretion—and indeed the responsibility—to define a class that satisfies Rule 23. A difference between the class pleaded and the class proposed for certification is therefore not itself a basis to deny certification. The relevant concern is whether the revised definition materially expands the litigation in a manner that deprives the defendant of fair notice or causes cognizable prejudice.

[2] Preliminary Note: Plaintiffs reiterate their request made before this Court on May 19, 2026, when Plaintiffs' Motion For Class Certification was initially presented, that the Court rule on this motion prior to addressing Plaintiffs' Motion For Partial Summary Judgment, Dkt. #63. Where a plaintiff files for summary judgment and class certification contemporaneously, the court must address certification first; if it does so, the one-way intervention concern is eliminated. *Costello v. BeavEx, Inc.*, 810 F.3d 1045 (7th Circ. 2016).

Rule 23(c)(1)(C) explicitly provides that an order that grants or denies class certification "may be altered or amended before final judgment." *Id.*; *Savanna Group, Inc. v. Trynex, Inc.* ,2013 WL 66181, 90 Fed. R. Evid. Serv. 428 (N.D.Ill., 2013). Courts within the Seventh Circuit have relied on this provision to support allowing a plaintiff to modify the class definition during certification proceedings, reasoning that the rule itself contemplates amendment of a certification order prior to judgment. *See*, e.g., *Flynn v. FCA US LLC*, 327 F.R.D. 206, 226 (S.D. Ill. 2018)("…the Court will adjust the class definitions rather than deny certification."); *N.B. v. Hamos,* 26 F. Supp. 3d, 756 (N.D. Ill. 2014)("…it is within this Court's discretion to" alter the class definition.); *Chapman v. First Index, inc.,* 796 F.3d 783(7th Cir. 2015)("The judge may ask for the parties' help, but motions practice and a decision under Rule 23 do not require the plaintiff to amend the complaint."). Defendant mocks Plaintiffs' reservation of the right to amend the class definition, calling it a moving target, Defts' Mem., p. 4, but that is precisely how Rule 23 is written and is intended to be administered.

## II. Plaintiffs' Notice Claim Was Pleaded Throughout The Complaint

BMO claims that Plaintiffs have asserted "a notice claim under § 1691(d) and 12 C.F.R. § 1002.9 **that appears nowhere in the Complaint"**, Deft's Mem., p. 1 (e*mphasis supplied.*) The "notice claim" plainly appears *throughout* the Complaint. To begin, the Complaint alleges at paragraph 31 that BMO's letter to PD Logistics set forth BMO's explanation - its reason - for terminating the line of credit it had granted:

> "BMO bank conducts regular reviews of customer, relationships and account activity for compliance and regulatory reasons. The purpose of the review is to identify any transaction or information that may not fit within our expectations or legal requirements, and therefore exceeds the risk tolerance of the bank."

*See*, Dkt. #1-2, 1-4, Complaint, ¶ 31. That is it. That is the sum and total of the explanation BMO gave Plaintiffs - and numerous others - for its termination of credit.

Paragraph 32 of the Complaint makes clear that this language is the only attempt at any explanation by BMO to provide a statement of reasons for its action in closing the line of credit - and specifically alleges that such a "statement (is) specifically required by ECOA." Dkt. #1, Complaint, ¶ 32.

Paragraph 33 sets forth the "notice claim" quite specifically, alleging that "BMO did not inform PD Logistics what the transaction or information was, or what about it does not fit within BMO's expectations or legal requirements, and what about such transaction or information supposedly exceeds the risk tolerance of the bank – the very same bank that extended the line of credit to PD Logistics only nine months before that time, in the first place." *Id.,* Complaint, ¶ 33.

Paragraph 45 of the Complaint directly complains about BMO's defective provision of notice under ECOA, and is not limited to any particular group:

> 45. Indeed, under ECOA, BMO was legally required to provide a statement of specific reasons for the decision it made to reduce or cancel the credit lines it had made available.

*See also*, *id*., Paragraphs 47, 48, 52. Paragraph 52 asserts:

> 52. ECOA also requires that each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor, in writing, as a matter of course to applicants against whom adverse action is taken, and to be advised of their right to receive such a statement.

Of course BMO has been on notice of the breadth of this claim, and this class, from the outset. Paragraph 58 of the Complaint alleges, as one of several common questions of fact or law: "whether BMO provided a statement of the specific reasons, in writing, for cancelling the credit

line;" That **is** the "notice claim". That allegation is likewise not limited to anyone of any particular national origin. Here is BMO's response to that allegation in the Complaint:

> "BMO **denies** each and every allegation in this paragraph, including that the identified issues constitute common questions capable of class-wide resolution, **that it** cancelled any line of credit without regard to actual creditworthiness, **failed to provide any required notice or statement of reasons, failed to comply with any timing or notice requirement**, or committed **any** violation of ECOA." (Dkt. #36, p. 35 (*emphasis added.*)

BMO plainly was put on notice of the "notice claim", and it actually denied that it had violated ECOA's notice provision, when it filed its Answer. It cannot be heard to now claim that it had no notice of the claim it previously explicitly denied. The "notice claim" has always been articulated in the Complaint, and for good reason: Notice of the reason for denial of credit is part and parcel - perhaps even the overriding rationale - for enacting the 1976 amendments to ECOA, *Chen v. Chase Bank USA, N.A.*, 393 F. Supp. 3d 850, 853 (N.D. Cal. 2019) ("Congress viewed the new 'requirement that creditors give reasons for adverse action' as fulfilling a separate educational or informational goal…"). When Congress debated and passed the amendments to ECOA, Congress said: "Only if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices." 147 S.Rep. No. 94–589, 94th Cong., 2d Sess. (reprinted in 1976 U.S.Code Cong. & Admin. News, pp. 403, 406).

The Seventh Circuit noted and quoted Congress' intention, stating that "…rejected credit applicants will now be able to learn where and how their credit status is deficient and this information should have a pervasive and valuable educational benefit. *Instead of being told only that they do not meet a particular creditor's standards*[3], consumers particularly should

[3] BMO nearly copies this prohibited language to its actual letters sent in this case: *See*, Dkt.##1-2, 1-3, 1-4, 1-5.

benefit from knowing…the reason for the denial…." *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 977 (7th Cir. 2004). *See also*, *Powell v. Pentagon Fed. Credit Union*, 2010 WL 3732195, at *4 (N.D. Ill. Sept. 17, 2010).

Interestingly, BMO's Answer to paragraph 54 of the Complaint, which sets forth Plaintiffs' initial class definition, objects "because it seeks class certification under Rule 23…." Answer, Dkt. #36, p. 31. Thus, Defendant has previously objected to setting forth *any* class certification definition; now it objects to *not* setting forth the *same* definition it objected to.

In contrast, the Seventh Circuit has held that "A complaint must contain three things: a statement of subject-matter jurisdiction, a claim for relief, and a demand for a remedy. Class definitions are not on that list." *Ali v. City of Chicago*, 34 F.4th 594, 602 (7th Cir. 2022).

## III. Plaintiffs Are Adequate Class Representatives And Their Claims Are Typical

Plaintiffs' Complaint sought certification of a defined class. *See*, Dkt. #1, ¶ 54. Plaintiffs' motion seeks certification of essentially that class, but not limited to individuals of Eastern European ethnicity or national origin, as well as a separate class of persons who specifically did not receive the federally-required notice when their credit was terminated, telling the borrower the name of the federal agency where they may complain about the revocation of credit. The revised definition also contains the standard exclusion from the class definition of a defendant's affiliates, opt-outs, and the Court. *See*, Dkt. #63.

When the Complaint was filed, Plaintiffs were unaware that BMO had failed to send 5,262 borrowers proper notice under ECOA of the reasons for BMO's termination of their credit. *See*, Dkt #64-2, PageID #:909, BMO's Supplemental Answers to Plaintiff's Interrogatories. It would make little sense to file an amended Complaint merely to allege a fact *Defendant* has asserted, so that Plaintiff could file a motion for class certification that "matches" the definition set forth in an

Amended Complaint. BMO has known all along what notice it sent to that group (and likely to thousands of other borrowers), and what the notice did and did not contain - based on the testimony to date about the forms BMO uses. *See*, Ex. 1 attached, TR 197:11-14.

BMO sent notices of revocation of lines of credit to thousands of borrowers that were not compliant with ECOA. Case law interpreting ECOA is very clear: The failure to provide a proper ECOA notice is separate from unlawful discrimination under ECOA on the basis of national origin or any other unlawfully discriminatory basis. *See, Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720, 728 (N.D. Ill. 2005) ("Without regard to allegations of discrimination, a creditor's failure to provide a written rejection notice is actionable under the ECOA.") and cases cited therein.

The proposed definition for the "B." class is also refined to exclude persons whom Defendant has successfully asserted the defense that would make such a putative class member arbitrate their claims. BMO claims that the class definition excludes "the named Plaintiffs" as class members because it reaches only those "who were not a party to BMO's Deposit Account Agreement for Personal and Business Accounts." The exclusion is intended merely to make clear that entities who are subject *only* to a deposit agreement are not part of the class. This Court's holding that dismissed the two individual Plaintiffs who were guarantors here, Dkt. # 35, is premised on being bound to the arbitration clause contained in their account agreements. At the same time, the Court recognized that the business entity-Plaintiffs were bound only to the terms of the line of credit they signed, which contain no arbitration clause. Dkt.# 35, p.8. As long as a class member has executed the LOA with its express language holding its terms prevail over any other agreements (including any arbitration agreement, *id*.), the participant is a proper class member. A reasonable construction of the class definition would treat the carve-out as applying to persons whose only BMO relationship was through a deposit account, not to credit line

borrowers who incidentally also held deposit accounts.

The presence of a legal dispute about guarantor coverage does not defeat Rule 23; it underscores that the question is common. BMO's reliance on dicta from *Moran Foods, 476 F.3d 436, 441-42* and post–*Loper Bright* acknowledgement of reversal of *Chevron* deference, *Loper Bright Enterprises v. Raimondo,* 603 U.S. 369, 412–13 (2024), does not change the certification analysis. This Court need not resolve the ultimate merits of guarantor coverage to certify a borrower-only class, and the question of whether guarantors are included is a uniform question across the class and can be decided once. Defendant's overbreadth point is therefore readily cured through class-definition tailoring rather than denial of certification.

BMO's alternative argument - that reading the carve-out narrowly triggers arbitration and class action waiver issues - has already been decided here. BMO moved to dismiss the corporate Plaintiffs and this Court denied that motion against the corporate Plaintiffs. *Id*. BMO has not since moved to compel arbitration against the named Plaintiffs, and the enforceability of any such provision is a separate inquiry that does not defeat certification at this stage.

BMO's argument that Plaintiffs' use of the credit line causes them to be "in default", Deft's Mem., p. 7, is gamesmanship. BMO never declared Plaintiffs to be in default, even when it revoked their lines of credit. That is a large part of the point of bringing this lawsuit. If Plaintiffs were actually in default, *e.g.*, failed to make payments, or otherwise violated the terms of the LOA while it was in effect, *and BMO called out that failure in a notice*, telling Plaintiffs that such failure was the reason for revoking the line of credit, then Plaintiffs would likely not be bringing this case. BMO's letter revoking the termination of the credit line does no such thing. See, Dkt.# 1-2 to 1-5.

Neither BMO nor any defendant can avoid class certification merely by conjuring up a

speculative fraud counter-claim with zero evidence to support it, then claim that claim as fact, that "GOTCHA! You defrauded us so you're not a viable class representative!" BMO impliedly admits its motivation: That counter-claim litigation "will consume the representatives 'attention." Deft's Mem., p. 7, making them distracted and therefore inadequate representatives. Plaintiffs have pursued this action and their representation of the class faithfully, notwithstanding BMO's insupportable RICO counter-claim. The mere possibility that Defendant might assert borrower-specific counterclaims does not automatically preclude predominance; courts routinely certify classes notwithstanding individualized defenses where the common liability issues predominate and defenses can be managed through subclassing, phased proceedings, or claims administration. If BMO contends counterclaims would be widespread and trial-dominating - so far, the counterclaim is against Plaintiffs and "fifteen unnamed co-conspirators", Dkt.# 36 - it bears the burden to show that with evidence - not speculation - and the Court can address any truly case-dispositive individualized issues through tailored class definitions or management tools rather than denying certification wholesale.

Next, BMO says Plaintiffs have no standing to assert a class claim. That is an argument directed toward liability, not class certification. As presented by Defendant, it is also a factual argument that is defeated by a review of Plaintiffs' testimony, and obviously so: Of course Plaintiffs would have cured any defect had any defect been actually presented to them by BMO; *see*, Exhibit 1 (Nenezic TR 126:4-10). It is also easily disposed of by reams of case law holding that the failure to provide notice of the reason for revocation of credit is a violation of ECOA all by itself. *See, e.g., Rayburn v. Car Credit Center Corp*., 2000 WL 1508238, *2–3 (N.D.Ill. Oct. 6, 2000); *Williams v. Thomas Pontiac–GMC–Nissan–Hyundai*, 1999 WL 787488, *3 (N.D.Ill. Sept.24, 1999); *Pinkett v. Payday Today Loans, LLC,* 1999 WL 592189, *1 (N.D.Ill. Aug.3, 1999);

*Costa v. Mauro Chevrolet, Inc.,* 390 F. Supp. 2d 720, 728–29 (N.D. Ill. 2005).

Defendant's "individualized defenses" argument conflates merits defenses with Rule 23's typicality and predominance requirements. Typicality is satisfied where the named Plaintiffs' claims arise from the same course of conduct and are based on the same legal theory as the class. Here, Plaintiffs and absent class members challenge the same practice: BMO's adverse action on business credit and its failure to provide ECOA-compliant notice. Defendant's assertion that it conducted "individualized risk reviews" does not change the nature of the claim—ECOA notice compliance turns on whether an adverse action occurred and whether the required notice was provided, not on whether BMO had good reasons for its decision. BMO's reasons may vary, but the legal violation alleged is uniform: failure to provide the required notice content and timing.

## IV. <u>The Class Definition Is Not A "Fail-Safe" Class</u>

Likewise, the argument that the class definition is an impermissible fail-safe because membership turns on whether each borrower was "not in default" defies the facts. A merits question, requiring account-by-account analysis, when BMO did not announce or possibly even conduct such an analysis at the time it revoked Plaintiff's or other class members' loans, is irrelevant. Instead, that analysis is all through the rear-view mirror, long after BMO revoked credit, and only after it faced this lawsuit. "A 'fail-safe' class is defined so that whether a person qualifies as a member depends on whether the person has a valid claim", *Wigod v. PNC Bank, N.A.*, 338 F. Supp. 3d 758, 773–74 (N.D. Ill. 2018). If the class definition turns on facts in the world, such as whether the borrower's loan was in default or when its credit score slipped, it does not turn on BMO's liability. Thus, if the class is certified and BMO successfully asserts a defense that applies to the entire class—for example, that BMO's failure to comply with the notice provision of FCRA, § 1002.9. stemmed from an inadvertent error, *see* 12 C.F.R. § 1002.16(c)—

all class members would be bound by the judgment.

## V. Numerosity Is Sufficient

BMO argues that Plaintiffs abandoned their ethnicity-based discrimination class because their own numerosity evidence demonstrated that approximately 98.7% of the roughly 5,330 terminations involved persons whose names did not end in '-ic' — specifically, 68[5] persons with '-ic 'surnames versus 5,262 without. BMO further argues that named Plaintiffs Durovic and Nenezic could not substantiate the discrimination theory from personal knowledge.

The numerosity figures BMO cites actually support rather than undermine the §1691(d) notice claim, because those 5,330 terminations represent the pool of borrowers who potentially received deficient adverse action notices - a class defined not by ethnicity but by receipt of a non-ECOA-compliant form letter. The fact that 98.7% of terminations involved non-'-ic 'surnames is irrelevant to a notice deficiency theory, which applies uniformly to all borrowers who received the same defective form regardless of national origin. As referenced in our opening brief, notably, Defendant's Rule 30(b)(6) deponent Collin Braasch testified that "a particular template (cancellation letter) is utilized when a line of credit is being demarketed", Exhibit 2, and that a form "totality of the relationship letter" is sent when the Bank terminates the entire banking relationship with the customer, as here. *Id.*, TR 198:12-18. Regarding whether such letters also reference the Equal Credit Opportunity Act, he also testified that he has "never seen a template that has that on there". *Id.,* TR 205:5-16.

Rule 23 does not require Plaintiffs to prove the final class list at certification; it requires a reasonable estimate and a showing that joinder is impracticable. Where the relevant data - notice

[5] Even a class of 68 members is sufficiently large for purposes of numerosity; *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017)("While there is no magic number that applies to every case, a forty–member class is often regarded as sufficient to meet the numerosity requirement.").

recipients, account status, agreement type, and adverse-action coding - resides with Defendant, numerosity is satisfied and any remaining refinement is an administrative exercise that can be completed through discovery and class administration.

## VI. Commonality and Predominance Is Met

BMO reframes Rule 23(a)(2) and (b)(3) to demand individualized adjudication of each borrower's circumstances, but Plaintiffs 'theory is the opposite: BMO used standardized adverse-action communications and a uniform practice of terminating/declining credit without providing ECOA-compliant notice. Commonality asks whether the case turns on questions "capable of classwide resolution," i.e., whether their truth or falsity "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. Here, the central questions are common: whether BMO's form notice(s) and associated standardized communications satisfied ECOA/Regulation B's content requirements; whether BMO's termination/credit-denial decisions triggered the notice duty; and whether BMO's practice was applied across the proposed class. Those questions are answered with BMO's own policies, templates, and centralized records—not by mini-trials about each borrower's subjective reaction.

Defendant's "default exclusion" argument does not defeat commonality or predominance. The class definition can be administered using objective, electronically stored criteria in BMO's possession (e.g., delinquency/default/inactivity flags, charge-off status, and the governing agreement type). To the extent BMO contends "default" requires individual inquiry into "Events of Default" across individualized agreements, that is a merits defense and a manageability point that can be addressed through objective account-status indicators BMO already uses in the ordinary course. Rule 23 does not require Plaintiffs to prove the merits at certification; it requires showing that common issues predominate and can be tried with common proof. The existence of some

individualized issues does not defeat predominance where, as here, liability turns on standardized conduct and standardized documents.

Plaintiffs 'revised class definition to a notice claim is not an admission that discrimination did not occur. It reflects a litigation strategy that focuses on a more readily provable, form-based statutory violation that benefits a broader class of harmed borrowers. The individual Plaintiffs ' inability to identify other Eastern European-surnamed borrowers is immaterial to the notice claim, which does not require proof of discriminatory intent but only that BMO's adverse action letters omitted the required Regulation B anti-discrimination notice. The strength or weakness of the underlying discrimination claim does not bear on whether BMO's form letters systematically failed to comply with § 1691(d) and 12 C.F.R. § 1002.9. (The individual Plaintiffs' inability to identify by name other Eastern Europeans whose accounts were closed certainly does not mean other Eastern European borrowers' accounts were not closed, or that they did not receive a proper notice.)

The class consists of entities that should have, but did not get proper ECOA notice. Confronted with the obvious commonality of whether those entities received such notice, BMO argues about "the default exclusion". Such an exclusion would not, however, forgive the defective notice. More importantly, the notice itself will determine whether the default exclusion was invoked. The notice given is a letter, and if the letter spells out that the borrower's credit is cancelled *because of a specific default*, then BMO wins that claim. (That position also underscores that this is not a fail-safe class, since if BMO can demonstrate invocation of the default exclusion in the notice, then the affected class members would have no notice claim.) Otherwise, that defense has nothing to do with complying with required statutory notice.

## VII. Injury And Standing Is Established

BMO continues its argument, addressed in Plaintiffs' reply brief on summary judgment, that the failure to provide notice did not create injury. Plaintiffs incorporate here by reference their reply to that argument in Dkt. # 103, Sections II & III, pp. 3-9, Defendant says a class defined by those who received a letter includes entities who would have done nothing differently and lost nothing at all if BMO had sent the notice it was required to send. First, the conclusion is speculation about an event that never transpired. It also ignores that the notice would have told the entity why their loan was cancelled. It ignores that the respondent would have had an opportunity to confront BMO over the cancellation, and perhaps continued its relationship with the Bank, rather than being told it now owes $100,000 in 90 days. The lack of notice *establishes* the injury.

The timing of BMO's loan terminations - "terminations by different people, under different criteria, for different reasons" - is not relevant to class certification of a class that did not receive required notice. The class period, and the limitations period, is governed by the timing of the filing of the complaint. *Binion v. Met. Pier & Expos. Auth'y*, 163 F.R.D. 517, 526 (N.D. Ill. 1995).

Defendant's standing argument likewise overreaches. *TransUnion* requires that class members seeking damages have Article III standing, but it does not convert certification into a borrower-by-borrower inquiry where the injury flows from the same unlawful practice and can be shown with common evidence. The injury here is the denial/termination of credit and the deprivation of statutorily required information at the time of adverse action - an injury that is tied to BMO's uniform failure to provide compliant notice. It is provable through BMO's records of adverse action and notice issuance. Again, to the extent BMO argues some members "would have done nothing differently," that is not a Rule 23(a)(2) defect; it is a merits and damages contention that does not defeat certification where the core liability question is common and where damages (including statutory damages) can be addressed through class wide proof and, if necessary, limited

individualized proceedings.

Nor does the existence of multiple letter versions defeat commonality. Variation among a small number of standardized templates is still susceptible to common proof: the Court can evaluate compliance template-by-template (or based on shared omissions across templates - *none* of the templates produced appear to actually provide a reason for termination of credit), and BMO's production and metadata can identify which template was sent to which account. Defendant's suggestion that "additional documents" might have been provided to some borrowers does not create predominance-destroying individual issues absent evidence that such supplemental communications were systematic, and ECOA-compliant. If BMO intends to argue that individualized "other documents" cured a deficient adverse-action notice, that is an affirmative defense that can be tested with BMO's own standardized workflows and document-retention practices—again, common proof.

Finally, Plaintiffs seek certification based on the challenged adverse-action practice and the standardized notices at issue. If Defendant contends earlier terminations are outside the common nucleus - which Plaintiffs contest - the remedy is to conform the class period and definition to the record—not to deny certification where the core challenged practice is common and can be adjudicated on a classwide basis.

## VIII. Rule 23(b)(2) Certification Is Not Foreclosed

Plaintiffs do not seek (b)(2) certification as an end-run around damages; rather, injunctive and declaratory relief address current, ongoing compliance obligations and standardized notice practices. That said, if the Court concludes monetary relief predominates, Plaintiffs can proceed under Rule 23(b)(3) (or seek hybrid certification where appropriate). BMO's standing argument against prospective relief is also overbroad: the relevant inquiry is whether there is a real and

immediate threat of future harm to the class (and whether the requested relief is appropriate for the class), and Plaintiffs can tailor requested injunctive relief to forward-looking compliance measures that do not depend on the named Plaintiffs 'likelihood of receiving another notice. In any event, (b)(2) is not necessary to certify the damages class under (b)(3), and BMO's (b)(2) objections do not undermine (b)(3) certification.

## IX. Superiority and Manageability are met

Superiority favors certification because the claims arise from standardized conduct and standardized documents, and individual litigation is impracticable given the modest per-member recovery relative to the cost of litigating ECOA notice compliance. Manageability concerns are overstated: BMO's own records can identify adverse actions, notice issuance, template versions, and account status. Any individualized issues BMO identifies—such as supplemental communications or damages—can be handled through phased proceedings (liability first, then damages), subclasses by template, or streamlined claims administration. Rule 23(b)(3) does not require a trial plan that eliminates all individual issues; it requires that common issues predominate and that the class mechanism is superior. Those standards are met where the core liability question—whether BMO's adverse-action notice practice complied with ECOA—can be resolved with common proof. Defendant's suggestion that parallel collection suits create unmanageability is speculative and, in any event, manageable. Potential setoffs, res judicata, or individualized litigation histories can be addressed through exclusions, subclasses, or claims-processing rules. They do not defeat certification where the alleged statutory violation is uniform and the principal evidence is common.

Dated: September 18, 2026

RESPECTFULLY SUBMITTED,

By: */s/ Jeffrey G. Brown*
One of the Attorneys for Plaintiffs

Jeffrey G. Brown
**JEFFREY GRANT BROWN, P.C.**
65 West Jackson Boulevard, #107
Chicago, Illinois 60604
Telephone: (312)789-9700
*jeff@JGBrownlaw.com*

Angel P. Bakov
**BAKOV LAW, LTD.**
One East Wacker Dr., Ste. 2510
Chicago, Illinois 60601
Telephone: (312) 880-1008
abakov@bakovlaw.com

Attorneys for Plaintiffs