IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **PD LOGISTICS, LLC, *et. al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 25-cv-06559** |
| **v.** | ) | |
| | ) | **Judge Sharon Johnson Coleman** |
| **BMO BANK, N.A.,** | ) | |
| | ) | **Magistrate Judge Laura K. McNally** |
| **Defendant.** | ) | |

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT
ON LIABILITY UNDER THE EQUAL CREDIT OPPORTUNITY ACT

## I. The Adequacy of BMO's Adverse Action Notices Has Always Been at Issue in This Case and BMO Has Had Sufficient Notice of Plaintiffs' Notice Based Claims Since the Inception of the Case.

Plaintiffs' Complaint includes Defendant, BMO Bank, N.A.'s ("BMO") termination letters as exhibits. Further, the Complaint contains the following allegations:

(i) regarding ECOA's notice requirements — including paragraphs 30, 45, 52, and 110 describing the requirement that a lender must provide a statement of reasons for any adverse action taken against applicant and specifically citing to section 1691(d) of ECOA, Regulation B, and to Section 12 C.F.R. § 1002.9(a)-(b);

(ii) regarding BMO's letters — including paragraphs 30-33 describing the letters' contents;

(iii) paragraphs 34 and 39 alleging a pattern of discriminatory treatment; and,

(iv) paragraphs 47-48 asserting BMO failed to provide any explanation and had no legitimate business reason.

These allegations were not just pleaded solely for pretext purposes, but also put BMO on notice that the adequacy of its adverse-action notices was at issue. Under notice pleading standards,

a complaint need not identify every legal theory so long as the facts alleged support the claim. Here, the § 1691(d) notice deficiency claim arises from the identical nucleus of operative facts — the August 2023 termination letters — as the § 1691(a) discrimination claim. Both claims challenge the same letters, the same termination event, and the same course of conduct. In *Whitaker v. Milwaukee County, Wisconsin*, 772 F.3d 802 (7th Cir. 2014), the Seventh Circuit permitted a plaintiff to offer a new legal characterization of the same claim on the same facts. Similarly, here Plaintiffs are not introducing any new factual bases, nor even a new legal claim, but rather applying an expansion of the legal claim already pleaded – ECOA's required notice - to facts already pled.

Moreover, Plaintiffs' Complaint's general prayer for relief and its incorporation of all preceding allegations into Count II are broad enough to encompass notice-based theories arising from the same letters. In *Aikens v. Northwestern Dodge, Inc.*, another ECOA case, the court evaluated whether a plaintiff's complaint adequately alleged a failure to provide adverse action notice under § 1691(d). 2004 WL 2967549 (N.D. Ill. Dec. 1, 2004). The court found that a specific paragraph in the complaint expressly alleging the defendant's failure to notify the plaintiff of the adverse action and the reasons thereof was sufficient to state the claim, even where that paragraph was not formally incorporated by reference into the relevant count. *Id.* at *4.

The sufficiency of BMO's letters has always been at issue. Indeed, this Honorable Court's March 4, 2026 Opinion and Order on BMO's Compel Arbitration and Motion to Dismiss (Dkt. #35) addressed this particular issue. Specifically, the Court discussed ECOA's notice requirement, the adequacy of BMO's termination letter to PD Logistics, and that BMO's sole explanation — referencing a compliance review and unspecified transactions exceeding the bank's risk tolerance — failed to inform PD Logistics what transaction or information was at issue, what did not fit

BMO's expectations or legal requirements, or what exceeded the bank's risk tolerance. *Id.* at pg. 4.

Plaintiffs' notice-based theories were not invented at summary judgment; they are grounded in documents — the August 2023 termination letters — that Defendant wrote and that both parties have possessed and litigated around since the inception of this case. BMO had full opportunity during discovery to develop facts relevant to the adequacy of its notices, and all of its own Rule 30(b)(6) designees[1] have testified about the notices at their depositions. There is no surprise or prejudice to BMO from the legal theories now advanced. Furthermore, under *Schmees v. HC1.com, Inc.,* 77 F.4th 483 (7th Cir. 2023), constructive amendment through summary judgment is discretionary, meaning the Court retains authority to permit it where, as here, the underlying facts were always in the case.

The futility prong of *Foman v. Davis*, 371 U.S. 178, 182 (1962), as cited by BMO, is not established merely by asserting standing deficiencies, which are themselves disputed; a claim is not futile unless it is clearly without merit on its face. That is not the case here. Given that the same letters, the same parties, and the same course of conduct are at issue, permitting the notice-based theories to proceed would not require reopening discovery or prejudicing BMO in any material way. Indeed, BMO's letters have always been central to this litigation.

## II. Plaintiffs' Testimony Established Concrete Injuries Stemming Directly from BMO's Defective Notices.

Federal courts have established that the amount or existence of actual damages is irrelevant to ECOA liability determinations, and credit applicants may recover enhanced remedies for regulatory violations regardless of whether they can quantify specific monetary harm. ECOA's

[1] *See* **Exhibit 1**, Deposition Transcript Excerpts of Mary Lou Bernitt at 189:5-191:21;
**Exhibit 2,** Deposition Transcript Excerpts of Melissa Stentz at 25:13-35:25; and,
**Exhibit 3**, Deposition Transcript Excerpts of Collin Braasch at 196:14-205:16.

remedial scheme recognizes that notice violations cause inherent harm to the credit application process and consumer education goals, warranting meaningful relief even absent traditional damages. Here, BMO's systematic failure to provide proper adverse action notices warrants punitive measures to deter future violations and ensure compliance with federal credit protection laws. That is especially true given BMO's Rule 30(b)(6) designee witness, Mr. Collin Braasch's testimony that BMO's adverse notices relating to customers' credit lines that it sends do not go into detail about transactions that "do not fit within the bank's expectations or legal requirements" and do not refence the Equal Credit Opportunity Act. *See* **Exhibit 3** at 198:5-205:16.

Plaintiffs do not rely on a bare procedural violation. ECOA's notice provisions protect substantive informational interests — the right to know why credit was denied or terminated — that have a close historical and common-law analog to the tort of fraudulent concealment and the right to be informed of adverse governmental or institutional action. Under *TransUnion*, a statutory violation that causes real-world informational harm — being deprived of information one was legally entitled to receive — can constitute a concrete injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). Here, both Plaintiffs were denied specific reasons for the termination of their lines of credit, leaving them unable to meaningfully respond, dispute the termination, or seek redress through the enforcement mechanisms ECOA's notice is designed to trigger. The very purpose of § 1691(d) and §1002.9(b)(1) is to empower credit applicants and borrowers with actionable information. Being deprived of that information is not an abstract harm but a tangible informational injury of the type Congress identified as cognizable. The Seventh Circuit cases BMO cites are wholly inapplicable debt-collection notices in FDCPA cases where the plaintiff had ample independent knowledge of the debt. That is a far cry from a commercial borrower receiving a termination letter out of the blue that omits any specific reason for the termination of credit required

by federal law and the identity of and contact information for the enforcement agency, also required by law, leaving the borrower without the statutory roadmap Congress mandated. *See* 12 C.F.R. § 1002.9

During its deposition, Plaintiff PD Logistics ("PD") was shown a conditional approval letter from BMO's Transportation Finance Department, dated December 8, 2022. ("BMO Transportation letter"). *See* **Exhibit 4**. The letter was sent to PD in response to PD's application for a credit loan for the purchase of trucking equipment. In BMO's email correspondence to PD, the BMO Transportation letter, which is contained as an attachment, is titled as "Customer RegB.pdf". *Id.* Curiously, the BMO Transportation letter does contain ECOA notice language that complies with Section 1691(d) of ECOA, Regulation B, and with Section 12 C.F.R. § 1002.9(a)-(b). *Id* at BMO14658 and BMO14660. At its deposition, PD was shown the BMO Transportation letter and asked if the credit line termination letter that PD received from BMO in August of 2023 had the same ECOA notice language as the BMO Transportation letter, what steps would PD have taken in response to it. *See* **Exhibit 5**, Deposition Transcript Excerpts of PD at 319:19-320:23. PD answered that it would have sent questions that it had to the address reflected on the letter and that it would have contacted the Bureau in Washington. *Id.* at 320:21-321:13 and 324:5-22. But, alas, PD never had the opportunity to do so because BMO's August 2023 credit line termination letter failed to provide the statutorily required notice, and failed to advise PD of its legal rights.

Regarding the August 2023 letter that PD did receive from BMO, PD testified that:" I understand that bank cannot send me the letter and say, you know, "Mr. Durovic, you do that, that, that, and that, and that's the reason. But they can give me some piece of the puzzle that I can make some move, send some additional documents to you, send some proof, send some explanation, do anything on my side to -- to save me as the customer of the bank. If the bank sent me a letter like

this, I cannot do nothing except that I accept something like this and then do whatever this letter say, nothing else. By sending me the letter in this form, basically, my hands are tied to correct anything that I might have done, if I did anything wrong at all." *Id.* at 235:2-236:19.

Furthermore, PD's 'no, nothing' answer must be understood in context. First, there is no "waiver of notice" provision in ECOA. The regulation uses mandatory language throughout - a creditor "shall" comply with the notification requirements, 12 C.F.R. § 1002.9. Thus, Plaintiffs cannot "agree" to not receive the required notice (unless it is provided in writing at the outset of the lending relationship, something which did not occur here). As such, an indication by a Plaintiff that they would or would not have acted differently is irrelevant to the requirement that they receive notice. Second, what someone would have done had the universe taken a different course is not knowable, and is speculative, and such evidence is therefore excluded under the Federal Rules of Evidence[2], which is why Plaintiffs' counsel objected to the question when it was posed. **Exhibit 5** at 314:3-4.

The question posed of PD was whether the witness would have done anything differently 'in connection with this letter,' which is an ambiguous framing that could reasonably be interpreted as asking whether he would have taken different action with respect to the letter itself, not whether the missing information would have affected his broader response to the termination. A deponent's colloquial answer to an ambiguous deposition question does not conclusively establish the absence of standing as a matter of law. Moreover, the 45-day delay in receiving the letter is itself a consequence of BMO's conduct — BMO sent the letter to an address where PD was not present, and the absence of proper notice during the 45-day window is precisely the type of harm the notice

---

[2] *See*, FRE 701, 702; *Ormond v. Anthem, Inc.,* 799 F. Supp. 2d 910 (SD Ind. 2011)("Speculation, regardless of whether it is part of an expert opinion or from a lay witness, cannot be the foundation for creating a material question of fact" in response to a motion for summary judgment).

provisions are designed to prevent. The inability to act during that window — when PD was 'in the dark' and could not contact counsel, seek regulatory assistance, or begin negotiating with BMO — is a concrete deprivation of the rights ECOA's notice provisions confer. The fact that injuries also flow from the termination itself does not eliminate the independent injury caused by the deficient notice; multiple causes of harm can coexist.

During its deposition, Plaintiff, Bans, Inc., ("Bans") was asked if BMO's credit line termination letter included notice that complied with ECOA, what Bans would have done in response to said notice. *See* **Exhibit 6**, Deposition Transcript Excerpts of Bans at 213:9-214:15. Bans testified that it would have contacted BMO in order to get an explanation as to why its account was closed. *Id.* When asked if BMO's notice had included instructions to write a letter to the Consumer Financial Protection Bureau, would Bans have written a letter to them, Bans testified: "Of course, yes." *Id*. at 224:14-225:7.

BMO's argument that Bans lacked standing because it never received the letter confirms, rather than negates, the injury: BMO's failure to ensure proper delivery of the required adverse-action notice is itself a violation of ECOA's notice obligations, and the resulting complete deprivation of the required information is a more severe informational injury than receipt of a deficient notice. The December 2023 BMO internal communication — acknowledging that the client 'never received the letter and was unaware that he would need to pay the entire balance off at once' — demonstrates that BMO was aware its notice failed to reach Bans and that this caused real confusion and financial harm. Furthermore, according to BMO's internal communications, a representative of BMO had contacted Bans via telephone on August 25, 2023, and had spoken to Bans' owner regarding BMO's letter. *See* **Exhibit 7**, BMO Internal communications: BMO 391-

392. That same internal communication confirms that BMO initially sent its letter to a different address than the one it had on file for Bans. *Id*. at BMO 390.

The fact that Bans testified 'there was really nothing I could have possibly done' by the time he received the letter underscores that the delayed and deficient notice deprived him of a meaningful opportunity to respond, which is precisely the concrete harm ECOA's notice provisions are designed to prevent. The industry-wide trucking decline does not eliminate BMO's independent causal contribution to Bans' harm; it is a separate concurrent cause, and BMO should not be allowed to escape liability for its own statutory violations by pointing to broader economic conditions.

**III. Under ECOA Plaintiffs are Entitled to Punitive Damages, Declaratory Relief, Injunctive Relief, and Costs Against BMO Even Without Proving Actual Damages from the ECOA violations.**

Ultimately, the amount or existence of actual damages is irrelevant to the instant motion, which only relates to liability. Furthermore, even if plaintiff is unable to prove any actual damages, he may be entitled to declaratory or injunctive relief, or punitive damages and costs, pursuant to regulation 202.13(a), 12 C.F.R. 202.13(a) (1977) and section 706(b), (c), (d) and (e) of the Equal Credit Opportunity Act, 15 U.S.C. s 1691e(b), (c), (d) and (e).

Nonetheless, in *Smith v. Lakeside Foods, Inc*., 449 F. Supp. 171 (N.D. Ill. 1978), the court held that "even if plaintiff is unable to prove any actual damages, she may be entitled to declaratory or injunctive relief, or punitive damages and costs" under ECOA. The court emphasized that "the amount or existence of actual damages is irrelevant to the instant motion, which only relates to liability," establishing that ECOA violations warrant remedies independent of monetary harm. *Id.*

In *Prayitno v. Nextep Funding LLC,* 2020 WL 3414955, at *7 (N.D. Ill. June 22, 2020), Judge Alonso discussed the distinction between bare procedural violations and statutory notice deficiencies that cause concrete harm, drawing on the Second Circuit's analysis in *Strubel v.*

*Comenity* Bank, 842 F.3d 181, 185 (2d Cir. 2016). The court recognized that a plaintiff suffers a concrete injury when a deficient notice deprives the consumer of information necessary to make informed decisions, creating a real risk of harm to the consumer's substantive interest in the informed use of credit. *Id.* Conversely, where a plaintiff cannot show that the deficient notice altered or would have altered their behavior, no concrete injury exists. This decision supports Plaintiffs' position that being denied the specific reasons for their credit line terminations — information Congress mandated to empower borrowers — constitutes a tangible informational harm, not an abstract procedural defect.

In fact, requiring an allegation of harm would conflict with ECOA's remedial scheme. While both actual damages and punitive damages are available under ECOA, "punitive damages may be awarded ... regardless of proof of actual damages." *Fischl v. Gen. Motors Acceptance Corp.*, 708 F.2d 143, 148 (5th Cir. 1983); *accord Anderson v. United Fin. Co.*, 666 F.2d 1274, 1278 (9th Cir. 1982). Moreover, ECOA authorizes courts to grant "equitable and declaratory relief as is necessary to enforce the requirements imposed under this subchapter." 15 U.S.C. § 1691e(c). This is especially so in light of the fact that Congress intended "private actions for actual and punitive damages" to be ECOA's "chief enforcement tool." S. Rep. No. 94-589, at 13 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 403, 415.

**IV. BMO's Deficient Notice Deprived Plaintiffs of Information Necessary to Respond in the Manner ECOA Contemplated, and Where Receipt of Such Information Would Have Changed Plaintiffs' Behavior, the Harm is Concrete for Article III Purposes.**

ECOA's notice requirement is a "strong and necessary adjunct to the antidiscrimination purpose of the legislation"[3] that enables credit applicants to learn where their credit status is deficient and provides educational benefits. BMO's failure to provide written notice of specific

[3] Senate Report No. 94-589 (1976)

reasons for cancelling PD Logistics and Bans' credit lines, and its failure to include mandatory anti-discrimination notices, constitute clear statutory violations that warrant summary judgment.

Any other interpretation of the statute would run contrary to the purpose of the strict notice requirement. Congress described this requirement as a strong and necessary adjunct to the antidiscrimination purpose of the legislation, for only if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices. *See* Senate Report No. 94-589 (1976). This principle underscores that anti-discrimination laws cannot succeed without mandatory transparency. In practice, it means that forcing an institution to provide an "adverse action notice" (explaining exactly why an applicant was rejected) serves two vital purposes: (1) deterrence: when creditors, lenders, or employers know they are legally required to put their reasoning in writing, they are heavily discouraged from making decisions based on implicit bias or outright discrimination; and (2) education and correction: it allows the rejected individual to understand where their application or conduct fell short, see how to improve, and—crucially—identify and correct cases where the decision was based on faulty or inaccurate data. In *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971 (7th Cir. 2004), the Seventh Circuit recognized that ECOA's notice requirement serves important consumer education purposes, noting that "rejected credit applicants will now be able to learn where and how their credit status is deficient." Plaintiffs here were never provided with such an opportunity.

In *Stauffer v. Innovative Heights Fairview Heights, LLC.*, 480 F.Supp.3d 888 (S.D. IL 2020), the court applied the Seventh Circuit's reasoning from *Robertson v. Allied Solutions*[4] and *Casillas v. Madison Avenue Associates*[5] to distinguish concrete informational injuries from purely procedural violations. The court held that where a plaintiff is wholly deprived of information

[4] *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 693 (7th Cir. 2018)
[5] *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)

necessary to respond in the manner a statute contemplated, and a chance to obtain a benefit that a statute afforded, and where receipt of that information may have changed the plaintiff's behavior, the harm is concrete for Article III purposes. *Id.* Here, BMO's omission of specific termination reasons and the identity of the relevant enforcement agency left Plaintiffs without the statutory roadmap ECOA was designed to provide, impairing their ability to dispute the credit line termination or seek redress.

The *Casillas v. Madison Avenue Associates, Inc.*[6], Seventh Circuit decision cited by BMO is distinguishable on its facts and actually supports Plaintiffs' standing when properly applied. In *Casillas*, the court found no concrete injury because the plaintiff had no intention of using the omitted debt-collection notice information and faced no real risk of losing any statutory rights. *Id.* By contrast, Plaintiffs here were commercial borrowers who received termination letters omitting the specific reasons required by federal law, leaving them without the information necessary to dispute the termination, correct any misunderstanding, or invoke ECOA's enforcement mechanisms — a materially different circumstance where the missing information had direct, practical utility.

**V. BMO's Credit Line Terminations Constitute Adverse Action Under ECOA and By Virtue of BMO's Own Admissions and its Internal Documents, Plaintiffs Did Not Default on the Credit Lines Before Their Termination.**

BMO's cancellations of existing credit lines constitute a clear "adverse action" under ECOA that triggers comprehensive notice requirements. The Seventh Circuit has broadly defined adverse action as "a denial or revocation of credit," and BMO's unilateral decision to cancel established credit lines falls squarely within this definition. The cancellation of credit lines is functionally equivalent to a credit denial, as both actions result in the applicant being deprived of

[6] 926 F.3d 329 (7th Cir. 2019)

credit they sought or previously had. BMO cannot escape ECOA liability by characterizing its conduct as mere "cancellation" rather than "denial" when the practical effect is identical - PD Logistics and Bans were left without the credit they had been extended and relied upon for their business operations.

The Seventh Circuit has explicitly so held, ruling that "adverse action" is defined as "a denial or revocation of credit" and that a unilateral decision not to extend credit constitutes adverse action. *Treadway v. Gateway Chevrolet Oldsmobile Inc.,* 362 F.3d 971 (7th Cir. 2004); *see also***,** *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827 (N.D. Ill. 2007) (ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction," emphasizing the broad scope of 'any credit transaction'.)

**a. Plaintiffs were not in default at the time BMO sent its credit line cancellation letters.**

It is undisputed that at the time BMO sent the adverse notices Plaintiffs were not in default of the credit line. This fact is proven by BMO's own admissions (see Plaintiffs' SMF at ¶¶21-22[7]), which BMO has never moved to withdraw or amend. *See* Fed. R. Civ. P. 36(b) (a matter admitted is conclusively established unless the court permits the party to withdraw or amend it). The fact is also proven by BMO's own documents – the credit line bank statements for both Plaintiffs (*see* **Exhibit 8**, PD's statement and **Exhibit 9**, Bans' statement) – that show Plaintiffs were making timely payments towards their lines at the time of the credit line termination and continued making payments even after their credit lines were closed.

BMO cites to Plaintiffs' testimony regarding their use of the credit line in support of its argument that Plaintiffs were in default due to their alleged breaches of the terms of the Letter of Agreement. However, at the time BMO sent its adverse letters, BMO had none of this information.

---

[7] Plaintiff's Memorandum of Law in Support of Their Motion for Partial Summary Judgment inadvertently misidentified SMF Paragraphs 23-24 instead of 21-22.

Moreover, had BMO truly made the determination that Plaintiffs had defaulted, it would have told them in its letters. It did not. In fact, the word "default" does not appear anywhere in BMO's credit termination letters. *See* Dkt. # 60-7 and 60-8. Neither do BMO's letters refence its Letter of Agreement terms or any alleged breach of same. *Id.*

Simply adding the phrase that Plaintiffs had defaulted on its loan obligations or by making a reference its Letter of Agreement default terms would have arguably made BMO's letters compliant with ECOA's notice requirements. Yet, BMO choose not to do that. Instead, BMO listed general and vague statements referencing its internal standards and policies - language that courts in this circuit and in others[8] have found does not comply with ECOA's strict notice requirements.

**VI. Regardless of Which Letter is the Operative Notice and What is Said, All of BMO's August 2023 Letters That It Sent to Plaintiffs Violate ECOA.**

Regardless of whether the Court considers the August 16 letter, the August 17 letter, or the August 14 letter (as argued by BMO) as the operative adverse-action notice, the issue remains the same. Adding "therefore exceeds the risk tolerance of the bank" does absolutely nothing to elucidate the reason for the revocation of credit. Plaintiffs have no way of determining or even knowing what if any of their transactions exceeded the risk tolerance of the bank. Such vague and general language does not comply with ECOA's notice requirements.

Lastly, BMO cites to federal law that allegedly constrains what a bank may say about a compliance review, in that it forbids a bank from disclosing that a customer's activity is or was the subject of a suspicious activity report. As argued *infra,* to comply with ECOA's notice requirement, BMO could have easily included a sentence in its letters that Plaintiffs had defaulted

[8] *See Treadway v. Gateway Chevrolet Oldsmobile Inc.,* 362 F.3d 971 (7th Cir. 2004); *Madrigal v. Kline Oldsmobile,* Inc., 423 F.3d 819, 822 (8th Cir.2005); *Chen v. Chase Bank USA, N.A*., 393 F. Supp. 3d 850, 854 (N.D. Cal. 2019); and, *Fischl v. General Motors Acceptance Corp*., 708 F.2d 143, 147 (5th Cir.1983), among other cited in Plaintiffs' Motion.

on the loan or that they had violated the Letter of Agreement's terms. Such a statement would not have disclosed to Plaintiffs that they were the subjects of a suspicious activity report. Yet, BMO made the decision not to do that. And because of its failure, BMO must now face the consequences of its blatant ECOA notice violations.

**DATED:** SEPTEMBER 18, 2026

RESPECTFULLY SUBMITTED,

By: *__/s/ Angel P. Bakov__*
One of the Attorneys for Plaintiffs

Angel P. Bakov
**BAKOV LAW, LTD.**
One East Wacker Dr., Ste. 2510
Chicago, Illinois 60601
Telephone: (312) 880-1008
abakov@bakovlaw.com

Jeffrey G. Brown
**JEFFREY GRANT BROWN, P.C.**
65 West Jackson Boulevard, #107
Chicago, Illinois 60604
Telephone: (312)789-9700
*jeff@JGBrownlaw.com*